# IN THE UNITED STATES DISTRICT COURT
## FOR THE  NORTHERN DISTRICT OF ALABABMA
### SOUTHERN DIVISION

| | |
|---|---|
| **TAMMY ARD, BELINDA** ) | |
| **BECOAT-ROGERS, SHAVONYA** ) | |
| **BYRD, STEPHANIE CARRINGTON,** ) | |
| **YOLANDA CHRISTIAN, THEARESA** ) | |
| **COLLIER, BETTY RUTH COOPER,** ) | |
| **DEANA COTTON, BARBARA** ) | |
| **DAWSON, PATRICIA DEESE,** ) | |
| **DEBRA FLAKE, DEBRA GILBERT,** ) | |
| **CAROL GONZALES, MAE-FRANCIS** ) | **CIVIL ACTION NO.:** |
| **GRIFFIN, TRISTEN HARRIS,** ) | |
| **PETRINA HOWARD, ALFREDA** ) | **_____** |
| **IRVING, BRITTANY JOHNSON,** ) | |
| **PATRICIA JOHNSON, CAROL** ) | |
| **KOPACZ, MARY LANDRY,** ) | |
| **CAROLYN LOVE, JOANN MAGEE,** ) | **JURY DEMAND** |
| **DOROTHEA MARTIN PEARS,** ) | |
| **THELMA MATTHEWS, DIANA** ) | |
| **McCORD, SHONNA NETTLES,** ) | |
| **SUE NEWMAN, STACY NIELSEN,** ) | |
| **ALMA ODOM, SHERLIA PHILLIPS,** ) | |
| **DEBRA PRESCOTT, LANIKA** ) | |
| **SAUNDERS, DEBRA SHEALEY,** ) | |
| **WILLIE MAE SHELLEY,** ) | |
| **KATHERINE SIMS, LUE SMEDLEY,** ) | |
| **BONNIE SPADARO, PENNY** ) | |
| **SULLIVAN, YOLANDA TAITE-** ) | |
| **BRYANT, NATALIE THOMAS,** ) | |
| **FELISHA TONEY, NIKI TUCKER,** ) | |
| **TAMMY TUGGLE, CONNIE** ) | |
| **WALDROP, JOCELYN "JOYCE"** ) | |
| **WILLIAMS, ANNETTE WILLIAMS,** ) | |
| **ELSIE WILLIAMS, TRACY WRIGHT,** ) | |
| **CRYSTAL YOUNG, and** ) | |
| **PAMELA YOUNG,** ) | |
| ) | |
| **PLAINTIFFS,** ) | |

**v.**                                                          )
                                                               )
**WAL-MART STORES, INC.,**                                     )
                                                               )
    **DEFENDANT.**                          )

## COMPLAINT

1.     The named Plaintiffs were employees of Defendant Wal-Mart Stores, Inc. ("Wal-Mart" or "Defendant") during the period covered by this lawsuit. Plaintiffs allege that Wal-Mart illegally discriminated against them by denying them compensation, promotion and training because of their gender.

2.     Plaintiffs allege that Wal-Mart engaged in gender-based disparate treatment and practices having disparate impact in regard to Plaintiffs' compensation, promotion and training opportunities because of their sex in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§2000e, et seq., as set forth in the balance of this Complaint.

## JURISDICTION AND VENUE

3.     Plaintiffs' claims arise under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, et seq.  This Court has jurisdiction over this matter pursuant to 42 U.S.C. § 2000e-5(f) and 28 U.S.C. §§ 1331, 1343(a)(4).

4.     Venue is proper in this district pursuant to 42 U.S.C. § 2000e-5(f) and 28 U.S.C. § 1391(b) & (c). Plaintiffs' claims arose in Alabama stores and/or the same Wal-Mart operational region as stores located in Alabama.

## BACKGROUND – CASE HISTORY AND EXHAUSTION OF REMEDIES

5.       Plaintiffs were formerly members of the national class of women challenging Wal-Mart's compensation, promotion and training policies and practices that was certified by the United States District Court for the Northern District of California in *Dukes v. Wal-Mart*, 222 F.R.D. 137 (N.D. Cal. 2004).

6.       Plaintiffs' time periods for filing EEOC charges and this litigation were tolled while Wal-Mart appealed certification of such class. On June 20, 2011, the United States Supreme Court reversed that certification in *Dukes v. Wal-Mart*, 564 U.S. 338 (2011).

7.       Following the Supreme Court's decision in *Dukes*, the United States District Court for the Northern District of California held that claims of class members would be tolled during the pendency of the national class action until the following dates: (1) former class members who had received a Notice of Right-to-Sue from the EEOC based on a claim encompassed by the former class definition would have until October 28, 2011 to file suit; (2) all other former class members in non-deferral states would have until January 27, 2012 to file a charge of discrimination with the EEOC based on conduct encompassed by the former class definition; and (3) all other former class members in deferral states would have until May 25, 2012 to file a charge of discrimination with the EEOC based on conduct

encompassed by the former class definition.  (*See* Judge Breyer's Order of August 19, 2011, attached hereto as Exhibit A).

8.     Plaintiffs timely filed charges of discrimination with the EEOC pursuant to the foregoing deadlines set by the Order entered by the United States District Court for the Northern District of California and have brought this action within 90 days of their receipt of Right-To-Sue letters from the EEOC.

9.     Plaintiffs have therefore exhausted their administrative remedies and complied with the statutory prerequisites for filing this Complaint pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§2000e, et seq.

## PARTIES

10.     Plaintiffs are Wal-Mart employees who worked in stores in Region 6 during the limitations period applicable to this Complaint.

11.      Defendant Wal-Mart Stores, Inc. is a Delaware corporation who employed the Plaintiffs. Its corporate headquarters is located in Bentonville, Arkansas.

## FACTUAL ALLEGATIONS

### *ORGANIZATIONAL STRUCTURE*

12.     Each of the Plaintiffs worked in stores in the same organizational unit of Wal-Mart's operations—Region 6. Plaintiffs' compensation, promotion and training opportunities were controlled by written policies that applied to all of

Region 6 and did not vary by, state, store or district in that Region. Region 6 governed Wal-Mart's operations in Alabama and parts of Mississippi, Louisiana and the Florida panhandle. Wal-Mart issued written policies that governed store-level compensation and promotions throughout Region 6. All Plaintiffs have been subject to the same compensation and promotion policies and practices regardless of their store or district in that Region.

13.     Region 6 was supervised and controlled by a Regional Vice President ("RVP") who had overall responsibility for all operations in all stores throughout the region, including the Plaintiffs' stores and compliance with Wal-Mart's personnel, compensation and promotion policies and practices. Moreover, the RVP was responsible for Assistant Managers' pay increases and had substantial influence over promotions into Management Trainee positions. Region 6 also had a Regional Personnel Manager ("RPM"), who was responsible for the "people side of the region." The RPM was responsible for promotions and starting compensation for Management Trainees, Assistant Managers and administration of the Management Training program, subject to the ultimate authority of the RVP. The Regional Vice President and Regional Personnel Manager controlled and administered compensation and appointments to Management Trainee, Assistant Manager and Store Manager positions and management training programs.

5

14.     The Regional Vice President also spent a large amount of time touring stores and inspecting the operations of all the stores in Region 6 and held regular in-person meetings and conference calls concerning store and district operations, including people issues. There was also a near constant stream of communications to and from regional management about such matters.

### *COMPENSATION POLICIES AND PRACTICES*

#### **Hourly Pay**

15.     *1998-2004 Hourly Pay Structure*: From 1998 through June 2004, Wal-Mart assigned all hourly jobs to five pay classes, the top two of which were only used for a few specialty jobs. Each job classification was assigned to the same pay class regardless of department, store, district or state in which an employee worked. Each successive pay class had a higher minimum starting pay rate ("start rate"). The minimum start rate for each pay class was established with the approval of the applicable District Manager and Regional Vice President.

16.     An individual pay rate set above or below the rate appropriate for the pay class of a given job was called an "exception."  Plaintiffs' male RVP had ultimate authority over whether to adjust, and by how much to adjust, the pay of individual hourly store employees, including those listed on exception reports. District Managers also played a role in such exceptions and adjustments subject to the RVP's ultimate authority. Store Managers were responsible for submitting a

proposed starting pay rate for an individual hourly employee in accordance with the pay class for that employee's job subject to the superior authority of the RVP and District Manager. Such exceptions were permitted to be approved at rates $2 or more per hour than the rate called for by the pay class for that job.

17. Wal-Mart's policy and practice on exceptions had disparate impact on women, including the Plaintiffs. The RVPs and District Managers given the responsibility of approving such exceptions to the corporate pay classes were predominantly men, and the exceptions they administered disproportionately favoured men both in frequency and dollar amount. Exceptions were primarily based on factors that adversely affected women disproportionately to men. Exceptions were based on discriminatory factors such as assignment to traditionally and disproportionately male jobs and departments, gender stereotypes about female capabilities and family responsibilities, prior pay that was disproportionately and systematically greater for men than women, prior experience in jobs that were traditionally and disproportionately assigned to men more than women, and other factors that similarly devalued and disfavoured female employees, including the Plaintiffs.

18. In 2004, Wal-Mart made such discriminatory factors a structural part of its pay system by implementing new departmental job classes that no longer paid the same rate for the same job, regardless of department, but paid different rates

depending upon the department an employee was assigned. Such departmental pay classes had disparate impact on women because traditionally and predominantly female jobs were assigned to lower departmental pay classes than the same jobs performed by men in the traditionally and disproportionately male jobs and departments. Prior to the 2004 restructuring of the pay classes, jobs were not structurally separated into different pay classes based on department; a Sales Associate was a Sales Associate, whether selling housewares in a traditionally female department or sporting goods in a traditionally male and disproportionately department. Rather than continuing to put all job classifications in the same pay class without regard to department as was the practice prior to 2004, Wal-Mart disproportionately placed traditional male jobs in higher departmental pay classes and disproportionately placed traditionally female jobs in lower departmental job classes, thereby, causing a significant disparate impact on what women were paid for the same or similar job and work as men in the same store, district and region. For example, Wal-Mart assigned the electronics, sporting goods, and hardware departments (departments in which men were over-represented) to a higher departmental pay class than that assigned to traditionally and disproportionately female departments and fields of work. Other departments that were traditionally and disproportionately female included, without limitation, the Infant/Toddlers, Health and Beauty Aids, Hosiery, and Women's Wear Departments. In contrast, the

8

Pets, Sporting Goods, and Horticulture (Lawn & Garden) were traditionally and disproportionately male departments.

19.    Such disparate impact and perpetuation of prior gender discrimination was exacerbated in 2005 when Wal-Mart made the foregoing discriminatory "prior experience" factor a formal part of its pay structure by adopting a system of "credits" for past work experience. Before then, prior experience had been a basis for "exceptions" to the pay class amount rather than a formal part of the pay structure itself. The new "credits" for prior experience were formulated in a way which had disparate impact on women and caused systemic disparities in women's starting pay, including the Plaintiffs. Women were first denied the opportunity to obtain such "prior experience" in the same way as men and then were paid less for not having the same experience that they had been denied, thereby freezing the status quo and perpetuating past gender-based discrimination.

20.    Such prior experience "credits" increased an employee's pay above the minimum start rate of the departmental pay class for a given job, thereby exacerbating and perpetuating gender disparities in pay. Because each credit was worth more to employees in higher pay levels, the application of this prior-experience credit policy exacerbated and perpetuated the gender disparities in pay caused by the departmental pay classes and the other elements of Wal-Mart's pay system. Such policy also had disparate impact on women because it assigned credits

9

for "each full year of retail experience or experience in a comparable position during the past five years." That practice had disparate impact because women have more interruptions in their work history for longer periods of time than men due to child-bearing and child-rearing responsibilities. *See e.g.,* Claudia Goldin & Joshua Mitchell, The New Life Cycle of Women's Employment, 31 Journal of Economic Perspectives, No. 1 (Winter 2017), 161, 163. Thus, for example, a man and a woman who each have five years of total retail experience will receive different credits if the man's prior experience is five consecutive years without interruption, and the woman's experience is five consecutive years with a 12-month interruption. Consequently, Wal-Mart's policy of crediting prior experience in this manner when setting starting pay caused and/or perpetuated significant gender disparities in women's compensation. Wal-Mart's policy of limiting such credits to prior experience in a "comparable position" also caused disparate impact by perpetuating prior gender disparities in job and department assignments.

21.     The prior experience credits applied to all hourly employees in Region 6, including each of the Plaintiffs, and did not vary by store, district or state.

22.     Such disparate impact and perpetuation of prior gender discrimination was further exacerbated in 2005 when Wal-Mart adopted a cap on the pay permitted for each job in 2006. Because the Plaintiffs and women in general were relegated to

the lower pay classes and departments, they automatically had lower pay caps under this policy. The new policy also caused disparate impact on the Plaintiffs and other women by capping the amount that could go toward reducing or eliminating the existing gender disparities in pay, thereby perpetuating and exacerbating such disparities and adverse impact.

### *Pay Raises*

23.    Wal-Mart employees could receive pay raises through three means: performance increases, promotional increases and merit increases.

24.    Wal-Mart's compensation policies perpetuated gender disparities in starting pay, and/or created additional pay disparities between male and female employees, by adopting a "start low, stay low" pay raise system. Disparities in starting pay were maintained and perpetuated through Wal-Mart's policy of basing pay raises on a percentage of prior pay, ensuring that those who started at lower pay continued to have lower dollar pay increases, including the Plaintiffs.   Because women disproportionately started at lower pay, they automatically had lower pay raises under this policy.

25.    Such gender disparities in pay were made worse by Wal-Mart's policy that allowed exceptions to the prescribed raise percentages and subjected the Plaintiffs to the predominantly male managers' gender stereotypes and bias concerning women's capabilities and family financial responsibilities.

### Management Pay

26.     ***Management Trainee Pay:*** As with hourly compensation, Wal-Mart issued written policies that governed management compensation throughout Region 6 and did not vary by store, district or state. The Regional Vice President and Regional Personnel Manager controlled and administered compensation and appointments to Management Trainee, Assistant Manager and Store Manager positions and training programs.

27.     Starting pay rates for employees promoted internally to Management Trainee was based on their prior pay as hourly employees, thus perpetuating the prior pay disparities between male and female hourly employees because the Plaintiffs, and  women on average, had lower hourly pay rates than similarly situated male hourly employees. Starting pay for Assistant Managers was, in turn, based on their Management Trainee pay, thereby perpetuating prior gender disparities in pay as both hourly employees and Management Trainees.

28.     Wal-Mart, however, adopted a discriminatory dual pay structure for external hires as Management Trainees. Rather than the formula based on prior pay adopted for internal promotions to Management Trainee, Wal-Mart adopted a separate policy and practice for external hires to that job and training program which based starting salaries on ad hoc decisions of the Regional Personnel Manager. That dual compensation structure had disparate impact on women because they

disproportionately became Management Trainees through internal promotions from hourly positions, while men disproportionately moved to those positions through external hiring that was not subject to the restrictive pay formula applied to internal promotions. This dual pay structure for Management trainees had disparate impact on women for this reason and because the resulting starting pay for female Management Trainees and Assistant Managers was significantly less than the starting pay of males in the same jobs. In addition, the male Regional Vice President controlled exceptions to such pay, and those exceptions favoured men and contributed to the disparate impact of the dual pay structure for Management Trainees.

29. ***Assistant Manager Pay:*** When trainees successfully completed the MIT program and became Assistant Managers, their pay was set by formula, initially $2,000 above MIT pay, which was itself directly tied to the hourly pay rate for internal promotions, as described above.

30. The pay for Assistant Managers who were external hires into the MIT program was also linked to their rate of pay while in the MIT program, but as described above, their MIT pay provided for higher compensation than for internal candidates. Any exceptions to these formulaic rules required approval of the Regional Personnel Manager. The RVP had overall responsibility for pay increases

for Assistant Managers and had influence over promotions into Management Trainee positions.

31.     Assistant Managers also received performance evaluations and associated performance pay increases each year, all on the same date. These were prepared by the Store Manager and District Manager, which were then reviewed and approved by the RVP. These performance increases were computed as a percentage of the base pay rate, perpetuating prior disparities in pay. Performance ratings, all approved by the RVP, could incorporate bias and unfairly rate women Assistant Managers lower than their peers. Performance increases and merit increases were also reviewed and approved by regional management.

32.     In addition to performance increases, Assistant Managers could receive merit increases from 2002 to 2006, which had to be approved by the District Manager and RPM. These merit increases were computed as a percentage of the base pay rate which perpetuated prior gender disparities in pay and also created new gender disparities in pay.

33.     ***Store Manager and Co-Manager Pay:*** Store Manager and Co-Manager compensation included a base salary and profit sharing based on the profitability of the store assigned. The Regional Vice President determined base salary and assigned the stores in which the profitability factor was based. For purposes of the profit-sharing component of Store Managers' and Co-Managers' compensation. The

14

factors in which such compensation was based had disparate impact because the male Regional Vice President for Region 6 disproportionately assigned the better and more profitable stores to men. Consequently, female Store Managers and Co-Managers' were disproportionately paid less than their male counterparts.

### *Pattern of Gender Disparities In Compensation*

34.     The forgoing battery of compensation policies and practices have had a disparate impact on the Plaintiffs' starting pay, pay raises and other compensation and otherwise discriminated against them because of their sex.

35.     The region-wide policies for setting pay for Management Trainees and Assistant Store Managers, along with decisions made at the regional level, led to statistically significant gender disparities in pay. Statistical analysis of the base salary of Management Trainees and Assistant Managers showed significant annual gender disparities in pay amounting to approximately $2200 to $3400 per year.

36.     Because reasons for compensation decisions have not been documented by Wal-Mart, specific elements of its compensation policies and decision-making are not capable of separation for analysis of each element of such policies and decision-making standing alone. Managers did not document the reason for setting, adjusting, or approving the compensation or exceptions of individual employees. Nor did Wal-Mart require any such documentation of the reasons for start rates and pay raises of

individual employees, or specify the weight to be accorded to any particular criterion or factor in setting or adjusting compensation.

### *Adverse Effect on Plaintiffs' Individual Compensation*

37.     Each Plaintiff's store and compensation were subject to the foregoing compensation policies and practices for Region 6 and, consequently, were paid less than they should have been paid, and that similarly situated male employees have been paid, due to the disparate impact set forth above which was caused by such policies and practices. Additional individual facts concerning the compensation denied each Plaintiff are set forth at paragraphs 76-500 below to the extent currently known or available.

38.     The Plaintiffs were unable to discover all of the males who were paid more than them for the same or similar job or work because Wal-Mart enforced a strict policy against employees disclosing or discussing their compensation with anyone else. Employees were subject to punishment if they were caught disclosing such information.  That policy and practice has had an adverse and disparate impact on the Plaintiffs and female employees of Wal-Mart by perpetuating gender-based disparities in compensation.

### *PROMOTION AND TRAINING POLICIES AND PRACTICES*

39.     Each store in Plaintiffs' region had the same job categories, job descriptions and management hierarchy.  At the bottom were the primary hourly

entry-level jobs of Cashier, Sales Associate, and Stocker.  The first step above that was an hourly supervisor position, primarily Department Manager and Support Manager. The position of Management Trainee was part of the Manager-In-Training program ("MIT"), which involved a four-to-five-month program that prepared employees to be Assistant Managers, a salaried position. Stores often had several Assistant Managers.  The next level was Co-Manager, a position used only in larger stores, and Store Manager.

40. ***Management Track Positions Below Assistant Manager:*** Support Managers are the highest level hourly supervisory positions.  Among other duties, they assume the duties of Assistant Manager in his or her absence.

41. Hourly-paid Support Manager and Department Manager positions typically led to salaried management promotions. The vast majority of vacancies in salaried management jobs were not posted or otherwise communicated to hourly employees and had no formal application process or job-related selection criteria or procedure.

42. Management-track promotional policies and practices denied interested and qualified women equal access to promotional opportunities because they were not posted, there was no open application system, and employees were not fully informed of selection criteria.  Moreover, managers do not require or use valid, job-related  selection criteria in promoting employees within Region 6.  Nor does Wal-

17

Mart specify the weight that should be accorded to any requirements for promotion. As a consequence, qualified women, including the Plaintiffs, have been denied equal access to management-track promotions because of their gender.

43.    Women applying for salaried management positions were often subjected to gender stereotyping, and were rejected out of hand for most openings in "masculine" departments such as sporting goods, hardware, etc.

44.    In deciding which employees to promote as Department Manager or Support Manager vacancies, Wal-Mart disproportionately restricted Plaintiffs and women throughout Region 6 to traditionally and disproportionately "female" departments, such as health and beauty, jewelry, softlines, and the service desk.

45.    ***Promotion to Management Trainee:***  Wal-Mart established entry into the MIT Program as a requirement for advancement into Assistant Manager and other salaried management positions.   Prior to 2003, there was no posting or application process for MIT positions or training.

46.    Wal-Mart discouraged and deterred women from seeking Management Trainee positions and entry to the MIT program by providing no posting or application process and by requiring that employees agree to unlimited relocation to anywhere in the United States that Wal-Mart chose to send them on the very limited salaries and benefits it paid for such jobs. Relocation requirements were a factor known to deter women from jobs subject to unrestricted relocation demands.  Wal-

Mart executives acknowledged that such unrestricted relocation requirements were not a job-related  business necessity. Among others, Wal-Mart's founder, Sam Walton, conceded that Wal-Mart's policies, particularly its relocation requirement, were an unnecessary barrier to female advancement, yet such policies and practices remained in place for years afterward.

47.     Such unlimited relocation requirement was an entrenched policy of Wal-Mart prior to 2003 and was known to discriminate against women based on the stereotype that they are more likely to be unable or unwilling to relocate than men because they are more often responsible for their children's welfare and their family's life and home. Wal-Mart's policy requiring unlimited relocation had no other basis or purpose than adversely impacting women because Management Trainees and other store-level managers were not, in fact, relocated on an unlimited basis. Wal-Mart eventually acknowledged this fact in 2003 when it changed the requirement of unlimited relocation to an agreement to: (1)  be assigned to a store up to a one-hour drive from home; (2) travel for up to six weeks; and (3) replacing the requirement of unlimited relocation with a statement that the  geographic scope of employees' relocation availability may be a factor that affect their odds for promotion. All three of these conditions continued to be based on the same gender stereotype that was the basis of the unlimited relocation requirement prior to 2003, and continued to have  a disparate impact on the promotion of women by causing

them to be disproportionately rejected for promotion to management positions that were subject to such relocation requirements, as well as disproportionately deterred from even applying for such positions. In addition, travel assignments were filled on a voluntary basis, so telling employees that six weeks of travel would be required was not a fair representation of the actual job.

48.     Wal-Mart first began posting Management Trainee vacancies in 2003, but only for one week, a few times per year. Starting in 2007, Wal-Mart began permitting employees to register in advance for the management positions they were interested in filling. Such pre-registration established an applicant list for each subsequent vacancy after centralized application of the minimum qualifications that Wal-Mart required for the job classification at issue.

49.     The predominately male management staff, however, circumvented the posting and selection process by previewing such candidate lists and closing the posting for particular vacancies without selecting anyone because the manager's favoured candidate was not included in the pool or was not promotable without raising questions about the selection. That practice was prevalent and adversely impacted women because they were disproportionately disfavoured for management positions and training for traditionally or disproportionately male jobs or departments.  Wal-Mart subsequently endorsed and facilitated such practice by implementing a new mechanism which gave the managers the means of previewing

the applicants before formally opening the posting so it could be closed without selecting anyone without creating an "exception" report that flagged the manager's circumvention of female applicants. Rather than prohibiting such manipulation of the posting, application and selection process, Wal-Mart installed  the mechanism made a standard practice. Wal-Mart was well aware that managers were previewing applicant lists and closing postings to game and manipulate the system in this manner. Such practice resulted in disparate treatment and/or disparate impact which adversely affected  women, including the Plaintiffs.

50.     The foregoing battery of systemic barriers caused the Plaintiffs, and women in general, to be promoted and paid at a rate far lower than expected in the absence of gender discrimination and given their representation in the pool of persons from which promotions were drawn.  The representation of women in every level of management has been far less than would be expected given the large number of available, qualified women. Women's rate of promotion was significantly less than 80% of the selection rate of similarly situated men. That disparity was also statistically significant and was not explained or eliminated when controlled for non-discriminatory factors.  Women were not being less qualified or less interested in promotions to management positions than their male peers. Wal-Mart's managers have previously testified that they have observed no gender differences in qualifications or interest in advancing into management positions and training.

21

51.    Wal-Mart's policies — including its failure to require managers to base promotion decisions for individual employees on job-related criteria, its refusal to post job openings, and the relocation conditions placed on applicants for management positions and the MIT program — have had an adverse impact upon its female employees, including the Plaintiffs.

52.    ***Promotion to Store Manager and Co-Manager:*** The foregoing selection process also applied to the promotion of Store Managers and Co-Managers for the most part.'  Co-Manager openings were rarely posted before 2005 or 2006, and there was no formal application process for most of that period.  Nor did Wal-Mart establish any competitive promotion criteria for making Co-Manager selections or store assignments. By contrast, Wal-Mart posted openings for most Store Manager positions, but restricted the right to apply to employees who first obtained their District Manager's permission to do so. That permission could be denied for any reason. Beginning in 2007, employees could pre-register their interest in a promotion before it became available. Rather than requiring management permission to apply, Wal-Mart substituted passing an online test as a condition for being considered. Store Managers and Co-Managers were selected by the Regional Vice President with input from the Regional Personnel Manager based upon whatever criteria they choose to apply, including their subjective preferences —

preferences which were easily based on gender stereotypes due to the way Wal-Mart structured and administered its promotion selection procedures.

53.     The foregoing policies and practices have had an adverse impact upon Wal-Mart's female employees and the Plaintiffs, including, but not limited to Wal-Mart's failure to require managers to base promotion decisions for individual employees on job-related criteria, its refusal to post job openings, and the relocation conditions it placed on applicants for management positions and the MIT program.

## *Gender Stereotypes and Bias*

54.     Wal-Mart's management has long known about gender disparities and bias in filling promotions and failed to take steps to assure equal opportunities for female employees, including the Plaintiffs. Senior management officials, senior People Division officials, and outside consultants have warned Wal-Mart that women are not sufficiently represented in management positions, that women are paid less than male employees in the same jobs, and that Wal-Mart lags behind its competitors in the promotion of women to management positions.

55.     These officials and consultants have also identified policies and practices at Wal-Mart that have an adverse impact on its female employees, including, without limitation, lack of consistent job posting, unnecessary relocation requirements as a condition of promotion to management positions and training, reliance on gender stereotypes in making pay, promotion and store assignment

23

decisions, and lack of objective, non-discriminatory selection criteria. Senior Wal-Mart managers also blocked policy changes that would have reduced the disparate impact and disparate treatment endemic to its promotion and compensation process.

56.     In the absence of job-related compensation and promotion criteria, Wal-Mart's managers relied on discriminatory stereotypes and bias against women in making pay and promotion decisions regarding the Plaintiffs and women throughout Region 6.

57.     A 1998 survey of Wal-Mart managers revealed that there was a "good ol boy philosophy" at Wal-Mart, that many male managers were either "close minded" about women in the workplace or "don't seem personally comfortable with women in leadership roles." The findings of the 1998 survey echoed an earlier 1992 report by a group of female Wal-Mart management employees, who identified a number of concerns for women employees, including the following: "Stereotypes limit the opportunities offered to women," "[c]areer decisions are made for associates based on gender," "[a]ggressive women intimidate men," "men are interviewed as the replacements, women are viewed as support," and "[m]en's informal network overlooks women."

58.     All Wal-Mart Store Managers have been required to attend training programs at the company's Walton Institute where they were taught, among other things, that the reason there are few female managers at Wal-Mart is because men

24

were "more aggressive in achieving those levels of responsibility" than women. Managers were also cautioned that efforts to promote women could lead to the loss of qualified men.

59.     On or about January 24, 2004, at a meeting of all Wal-Mart District Managers presided over by Wal-Mart's CEO Thomas Coughlin, the District Managers were told that they are "the culture" of Wal-Mart, that the key to Wal-Mart's success is "single focus to get the job done", that "men are better at focus single objective" and being "results driven", and that they should create a "culture of execution" and a "culture of results" as they picked "[f]uture leaders."

60.     Managers in the store(s) where Plaintiffs have worked, and managers who supervised those stores, justified denying promotions to women or paying them less than their male employees because of gender stereotypes that women are less valuable or qualified because of their greater  family and children obligations and that men are more deserving than women because they supposedly have more family financial obligations than women.

61.     Wal-Mart's management also expressed additional gender bias and stereotypes to individual named plaintiffs.

62.     Consequently, the Plaintiffs and female Wal-Mart employees in general have been far less likely than similarly situated male employees to be promoted to management track positions —including Support Manager, Assistant Manager, Co-

Manager, and Store Manager positions — despite the fact that they have had equal or better qualifications than their male peers who were promoted over them. The Plaintiffs and women in general were disproportionately delayed in being promoted to management track positions substantially longer than similarly situated men with equal or lesser qualifications. The Regional Vice President and Regional Personnel Manager regularly visited stores in the region, including the Plaintiffs' stores, and were therefore aware of the openly skewed gender composition of the workforce and promotions to management positions and training programs.

### *Pattern of Gender Discrimination and Disparate Impact In Promotions*

63.   The pattern of Wal-Mart's selections for management positions referrals were significantly different from that of the pool of persons from which such selections were made. In the course of working at Wal-Mart, the Plaintiffs saw: (a) the gender of the employees who were selected to fill such management positions; (b) the gender of employees working in the jobs and departments from which such selections were normally drawn; and and (c) the gender of the incumbent managers who routinely administered and participated in such selections.

64.   Based on such knowledge and observation while working at Wal-Mart, Plaintiffs saw that management promotions were disproportionate to the number of qualified women in the jobs from which such promotions were normally drawn. The

selection rate for women from such pool was less than 80% of the selection rate of men.

65.     In Plaintiffs' stores, districts and region, women comprised greater than 60% of the hourly employees from which management candidates and selections were drawn, but comprised less than 30% of Managers-in-Training, Assistant Managers, Co-Managers, and Store Managers. Men comprised greater than 90% of the District Managers and in the districts and region in which the Plaintiffs worked. All RVPs in Plaintiffs' region were men.

66.     Strong statistical evidence has shown that Wal-Mart's  compensation and promotion policies and practices have adversely and disproportionately affected women because of their gender and that Wal-Mart operated under a general policy of gender-based discrimination. Such statistical disparities are bolstered by, and conform to, the sexual stereotypes about how much women should be paid and what kind of work they should be allowed to perform that have been expressed and/or applied by Wal-Mart managers and corporate officers.

67.     Women who held hourly positions in the stores, districts and region where Plaintiffs worked have been regularly paid less than similarly-situated men, although, on average, women have more job experience, years of service and higher performance ratings than their male counterparts, including the Plaintiffs. This

gender pay difference adverse to women exists throughout the stores, districts and region in which Plaintiffs have worked.

68.     The pattern of Wal-Mart's selections for management positions and training opportunities that the Plaintiffs saw and experienced at Wal-Mart was the same or similar to the pattern documented in the statistical analysis of Dr. Drogin in the *Dukes v. Wal-Mart* case. That analysis showed an overall pattern of disparities between men and women at the company with respect to promotion into management positions and training programs that was consistent with what the Plaintiffs saw during their employment at Wal-Mart.

69.     Because Wal-Mart's reasons for individual promotion decisions and the impact of specific elements of its promotion practices were not documented, such elements are not capable of separation for analysis of each element standing alone and the disparate impact of such promotion practices must be determined for the selection process as a whole pursuant to 42 U.S.C. 2000e-2(k)(1)(B)(i). Nor did Wal-Mart require any such documentation or data, or specify the weight to be accorded any particular criterion or element of its promotion selection process.

70.     The named Plaintiffs have been denied promotions and training because of their gender and the disparate impact of Wal-Mart's promotion policies and practices set forth above.

71.     Management positions and training were disproportionately filled by men and it was difficult for women to obtain such opportunities because the selection process and criteria were disproportionately skewed towards predominantly male characteristics due to traditional gender stereotypes and past gender discrimination, including, but not limited to, prior experience and lifting requirements/moving requirements or criteria. Women, including the Plaintiffs, were first denied the opportunity to obtain such "prior experience" in the same way as men and then were paid less for not having the very same experience that they had been denied, thereby freezing the status quo and perpetuating past gender-based discrimination.

72.     Women were relegated to the lower paying positions or departments, while men were assigned to the traditionally higher paying male jobs and departments. For instance, the vast majority of the department managers and other managers were men even though women were a majority of the store as a whole, while the cashier and other traditionally female jobs or departments continued to be predominantly and disproportionately assigned to females.

73.     Wal-Mart's "word-of-mouth" selection procedure adversely affected the Plaintiffs and women generally because men had greater access to such "word-of-mouth" from Wal-Mart's predominantly and disproportionately male managers. Wal-Mart's policy of not posting or announcing promotion opportunities or providing a process for applying for such promotions caused each of the Plaintiffs

to be denied management positions and/or training that they were qualified to fill and that were given to male employees instead. Consequently, each of the Plaintiffs were deprived of knowledge about, and the opportunity to compete for, promotion opportunities they were interested in filling and that were given to male employees instead.

### *Adverse Effect on Plaintiffs' Individual Promotion Opportunities*

74.    Based on their knowledge and experience from working at Wal-Mart, each of the Plaintiffs had personal knowledge of the qualifications necessary to perform and be promoted to the jobs they applied for or were interested in filling, as well as the fact that they possessed such qualifications. In the course of their Wal-Mart employment, the Plaintiffs became knowledgeable of and observed the job duties and qualifications exhibited in the performance of the positions they applied for or were interested in filling. Among other knowledge and experience, the Plaintiffs worked shoulder-to-shoulder with a broad cross-section of employees performing in and around such jobs, and each of the Plaintiffs knew their own training, experience, job knowledge, skills, abilities and other personal characteristics that made them qualified for the jobs they sought before they went to the trouble of applying for or otherwise pursuing such jobs.

75.    Because Wal-Mart did not consistently post or announce promotion opportunities that were open to competition and often selected many people at the

same time for Manager Trainee and the MIT program., it was difficult, if not impossible, for the Plaintiffs to identify specific male employees with whom they competed head-to-head or that were selected instead of them. Wal-Mart's practice of selecting an array of employees for the Management Trainee position and Manager Training program at the same time precluded the Plaintiffs from knowing particular employees that were favoured over them.

### *NAMED PLAINTIFFS' INDIVIDUAL FACTS*

76.     ***Tammy Ard:***  Ms. Ard began her employment in a Customer Service position on August 23, 1994 in Walmart Store #489, located in Hammond, Louisiana.  She had a Bachelor's Degree and served as a Customer Service Manager, a Department Manager and a Support Manager during her seven years of employment with Wal-Mart (1994-2001).

77.     Male employees performing the same jobs were paid significantly more than Ard. For example, Ben (last name unknown) and another male, Peronia Clark, admitted to Ard that they were paid $10+/hour per hour for performing the same position she performed. Ard also received only a $.50 per hour raise when she became a Support Manager, which is an assistant to the Assistant Manager.  Males in this same position admitted they were paid more than her. Her pay was consistently less than that of males in the same or similar positions and who had similar or less years of service and/or experience in such positions . Consequently,

she resigned from Wal-Mart on May 28, 2001 because she was dissatisfied with her career and pay opportunities as a female employee working for Wal-Mart.

78.     Plaintiff Ard's store and employment were subject to the compensation and promotion policies and practices for Region 6 that are set forth in paragraphs 15-25, 36, 39-72 of this Complaint. Because of her gender, she was paid less than she should have been paid, and that similarly situated male employees have been paid, due to the disparate impact of Wal-Mart's compensation policies and practices set forth in paragraphs 15-25, 34-36, 53-61, 65-67 above, each of which paragraphs are hereby specifically restated verbatim and incorporated by reference as part of Plaintiff Ard's  facts and claims in this case.

79.     Plaintiff Ard has also been denied promotions because of her gender and the disparate impact of Wal-Mart's promotion policies and practices set forth in paragraphs 39-72 above, each of which paragraphs are hereby specifically restated verbatim and incorporated by reference as part of Plaintiff Ard's  facts and claims in this case. The store in which Plaintiff Ard worked applied the same promotion policies and practices as all the other stores in Region 6 which are set forth in  such paragraphs.   She was interested in promotion to management positions and training, including, without limitation, Manager Trainee and Assistant Store Manager.

80.     Based on her knowledge and experience from working at Wal-Mart, as set forth more fully above, Plaintiff Ard had personal knowledge of the

qualifications necessary to perform and be promoted to the jobs she sought or was interested in filling, as well as personal knowledge of the fact that she possessed and satisfied such qualifications. *See* ¶73 above. She was nevertheless denied such promotions and they were given instead to male employees.

81.     ***Belinda Becoat-Rogers:***     Ms. Becoat-Rogers began her employment in August 1997, as an Over-night Stock Associate in Walmart Store #1311, located in Columbus, Georgia. She left Wal-Mart in September, 2003. During her employment with Wal-Mart she performed many different jobs throughout Store 1311, including, without limitation, overnight stocker/unloader and Customer Service Manager. She was never paid, however, at the rate commensurate with the Customer Service Manager job she was performing or given title of such despite having been promised both  pay and title by her immediate superior, Mike Pitts.

82.     Plaintiff Rogers' store and employment were subject to the compensation and promotion policies and practices for Region 6 that are set forth in paragraphs 15-25, 36, 39-72 of this Complaint. Because of her gender, she was paid less than she should have been paid, and that similarly situated male employees have been paid, due to the disparate impact of Wal-Mart's compensation policies and practices set forth in paragraphs 15-25, 34-36, 53-61, 65-67 above, each of which paragraphs are hereby specifically restated verbatim and incorporated by reference as part of Plaintiff  Rogers'  facts and claims in this case.

83.     Male employees performing the same or similar jobs as Rogers were paid significantly more than her. For example, Kevin Bates, an unloader on the overnight shift, made a \$0.75 to \$1 more per hour for performing the same or similar work as her even though he began his employment with Wal-Mart after she did, She also discovered that Frank (last name unknown) and Steven (last name unknown) were paid more than her when first hired as unloaders even though she had been successfully performing the same unloader job before then. Throughout her employment at Wal-Mart, Rogers' pay was consistently less than that of men in the same or similar jobs with less years of service and/or experience in such jobs.

84.     During her tenure at Wal-Mart, Rogers was very interested in being promoted into management positions, including, without, limitation, the Manager-In-Training position which was part of Wal-Mart's Management Training Program, Department Manager, Support Manager, Management Trainee and Assistant Store Manager. Among other efforts, she expressed her interest in management opportunities and  the Management Training Program to her immediate superiors, Mike Pitts and Bryan (last name unknown). When she expressed that interest and inquired about what she needed to do to be considered for those opportunities, she was laughed at and told that "they didn't need any more managers." That, however, was not true because in the same time frame two males that were hired after her —

Kevin Bates and Edwin (last name unknown) — were promoted into the Management Training Program and the position of Assistant Manager.

85.     Plaintiff Rogers has been denied promotions because of her gender and the disparate impact of Wal-Mart's promotion policies and practices set forth in paragraphs 39-72 above, each of which paragraphs are hereby specifically restated verbatim and incorporated by reference as part of Plaintiff Rogers' facts and claims in this case.

86.     Based on her knowledge and experience from working at Wal-Mart, as set forth more fully above, Plaintiff Rogers had personal knowledge of the qualifications necessary to perform and be promoted to the jobs she sought or was interested in filling, as well as personal knowledge of the fact that she possessed and satisfied such qualifications. *See* ¶73 above. She was nevertheless denied such promotions and they were given instead to male employees.

87.     ***Yolanda Bryant:***  Ms. Bryant began her employment as a Cashier for Wal-Mart Store #1174 in Thomasville, Alabama in February of 1996. She also worked for Walmart at Store #787, located in Riverdale, Georgia  starting in March 2006.

88.     Plaintiff Bryant's store and employment were subject to the compensation and promotion policies and practices for Region 6 that are set forth in paragraphs 15-25, 36, 39-72 of this Complaint. Because of her gender, she was paid

less than she should have been paid, and that similarly situated male employees have been paid, due to the disparate impact of Wal-Mart's compensation policies and practices set forth in paragraphs  15-25, 34-36, 53, 61, 65-67 above, each of which paragraphs are hereby specifically restated verbatim and incorporated by reference as part of Plaintiff Bryant's  facts and claims in this case.

89.     Male employees performing the same job as her were paid significantly more than Bryant for the same or similar work in the same store and district. For example, she learned from Scottie (last name unknown), an Associate in her department who was still in school, that he started at the same pay rate as her even though she had been working for six years when he was hired. Her pay was consistently less than that of males in the same position who had similar or less years of service and/or experience in the same or similar positions.

90.     Wal-Mart made it difficult for Bryant and other female employees to learn what their male coworkers were being paid for the same or similar work and jobs. When she was hired, Wal-Mart's human resource representative, Judy (last name unknown), told her to not discuss her pay or promotional information with anyone, especially coworkers, if she wanted to keep her job.

91.     Bryant pursued several promotion opportunities, including the Management Training Program, Department Manager, Support Manager, Management Trainee and Assistant Store Manager. She was never interviewed or

considered for such opportunities, however, despite her qualifications for the jobs she sought. For example, Ashley Ivory started out as a cashier and was quickly promoted over Bryant even though he had a lot less experience and qualifications.

92. Plaintiff Bryant has been denied promotions because of her gender and the disparate impact of Wal-Mart's promotion policies and practices set forth in paragraphs 39-72 above, each of which paragraphs are hereby specifically restated verbatim and incorporated by reference as part of Plaintiff Bryant's facts and claims in this case.

93. Based on her knowledge and experience from working at Wal-Mart, as set forth more fully above, Plaintiff Bryant had personal knowledge of the qualifications necessary to perform and be promoted to the jobs she sought or was interested in filling, as well as personal knowledge of the fact that she possessed and satisfied such qualifications. *See* ¶73 above. She was nevertheless denied such promotions and they were given instead to male employees.

94. *Shavonya Byrd:* Ms. Byrd worked from December 2003 until her resignation in November 2010 at Store #604 in Dothan, Alabama. She also worked at Store #1666 in Charlotte, North Carolina begining in May 2013. Bryant left Wal-Mart in November 2010 because of the gender discrimination and harassment she experienced.

37

95.     During her employment in Region 6, Byrd discovered various less experienced male employees who were paid more than her despite working lower jobs and having less years of service with Wal-Mart. For example, Bryant discovered that a male who worked in the same job as her as a cashier in the sporting goods department was being paid between $1.80 and $2 more per hour than her even though he had been been employed with Wal-Mart for approximately 3 to 6 months compared to Byrd's six years years of service and experience as a Cashier.

96.     Plaintiff Byrd's store and employment were subject to the compensation and promotion policies and practices for Region 6 that are set forth in paragraphs 15-25-36, 39-72 of this Complaint. Because of her gender, she was paid less than she should have been paid, and that similarly situated male employees have been paid, due to the disparate impact of Wal-Mart's compensation policies and practices set forth in paragraphs 15-25, 34-36, 53-61, 65-67 above, each of which paragraphs are hereby specifically restated verbatim and incorporated by reference as part of Plaintiff Byrd's  facts and claims in this case.

97.     Byrd applied for a Manager-In-Training  position as part of Wal-Mart's Management Training program, and complained to Walmart's Ethics Hotline about her non-selection for the program.  A male employee named Robert was given one such promotion and the second vacancy was left unfilled until after Bryant left Wal-Mart in 2010.

98.    Byrd began applying for management positions in 2004, including, without limitation, promotions to Assistant Store Manager and Manager-In-Training. She took all the required management assessment tests necessary for such jobs Her male managers merely laughed at her interest in promoting beyond the traditionally female position of Cashier rather than interviewing or considering her applications. She was repeatedly told that she would not be considered for any other positions. When she expressed her interest in entering the Manager Training Program to Human Resources, Store Manager Pete White and other members of management, she was falsely told that no such position or vacancy existed. Approximately two months after she was told that the position didn't exist, Store Manager White brought a new male employee into the break-room and stated  "let's congratulate him on being promoted into the Management Training Program."  Byrd confronted  White about why he had told her that the position did not exist when she asked to be considered for it and called the Wal-Mart Ethics Hotline to trport her treatment aimed at circumventing her consideration for the MIT position given to the male employee. She reported that such treatment discriminated against her because of her gender. The only response she received was that such discrimination was not an ethics issue.

99.    Byrd also expressed her interest in the Personnel Team Coordinator position in the Accounting Office, a management position in the Electronics

Department, and an Assistant Human Resources position in 2008 or 2009. The latter position was for a vacancy at another Wal-Mart location. She asked the HR Manager what qualifications were needed and what she needed to do to be considered for the position, but was told "You'll never get that position unless one of us die."

100.   Additionally, Byrd applied for a vacant CSM position around 2009 and was given an interview. In the interview, she was told that she was qualified for the position and that would be a great fit. However, when looking through my file, the man interviewing me said something to the effect of "you have a right dot by your name, never mind." When I asked him what he meant by his statement.  He refused to answer me, and said "forget I ever said that." Byrd was denied the CSM position in favor of a less qualified male who had only been with the company a short period of time.

101.   Plaintiff  Byrd has been denied promotions because of her gender and the disparate impact of Wal-Mart's promotion policies and practices set forth in paragraphs 39-72 above, each of which paragraphs are hereby specifically restated verbatim and incorporated by reference as part of Plaintiff  Byrd's  facts and claims in this case.

102.   Based on her knowledge and experience from working at Wal-Mart, as set forth more fully above, Plaintiff Byrd had personal knowledge of the qualifications necessary to perform and be promoted to the jobs she sought or was

interested in filling, as well as personal knowledge of the fact that she possessed and satisfied such qualifications. *See* ¶73 above. She was nevertheless denied such promotions and they were given instead to male employees.

103. ***Stephanie Carrington:*** Ms. Carrington began her employment at Wal-Mart in April 1991 in Store #990, located in Pace, Florida. She left Wal-Mart on January 3, 2000. She was assigned and performed the same duties and responsibilities of department manager in the layaway department that male employees performed as department managers, Wal-Mart, however, refused to pay her at the same rate as the male department managers performing the same duties and responsibilities or to even give her the formal title of department manager consistent with the duties she was assigned. Based on her daily work at Wal-Mart, she observed that she was performing the same or similar work as other less experienced male department managers, but learned that she was paid a substantially lower rate of pay than her male cohorts. Men paid more than her for the same work often told her that they were hired in at higher rates than she was being paid after years of service at Wal-Mart. When she eventually resigned on January 3, 2000, she was still being paid just $7.49 per hour despite having been employed for nine years. Carrington also observed and had personal knowledge that throughout her tenure with Wal-Mart men were given better hours and better pay for the same work she was performing, that women were forced to stay in their traditionally female

positions like cashiers, and that men were disproportionately assigned to the higher paying, traditionally male positions in the higher paying departments.

104. Carrington's requested the pay and title of department manager commensurate with the duties she was performing, but her request was denied. Promotions were not advertised and she mainly learned about promotions through word-of-mouth.

105. Plaintiff Carrington's store and employment were subject to the compensation and promotion policies and practices for Region 6 that are set forth in paragraphs 15-25, 36, 39-72 of this Complaint. Because of her gender, she was paid less than she should have been paid, and that similarly situated male employees have been paid, due to the disparate impact of Wal-Mart's compensation policies and practices set forth in paragraphs 15-25, 34-36, 53-61, 65-67 above, each of which paragraphs are hereby specifically restated verbatim and incorporated by reference as part of Plaintiff Carrington's facts and claims in this case.

106. Like the other Plaintiffs, Carrington was told by Human Resources during her initial employee orientation that she was prohibited from disclosing her pay or learning the pay of others. Women in particular were prohibited from discussing "guys vs. gals" compensation and promotional opportunities.

107. Plaintiff Carrington has been denied promotions because of her gender and the disparate impact of Wal-Mart's promotion policies and practices set forth in

paragraphs 39-72 above, each of which paragraphs are hereby specifically restated verbatim and incorporated by reference as part of Plaintiff  Carrington's  facts and claims in this case.

108.    Men were disproportionately put in management positions and  women were disproportionately assigned to lower paying and lower opportunity  positions like cashier. Men were also given promotions much quicker than women at store #990 because it was a "good ole' boy system" that gave men more information about promotional opportunities than women.

109.    For example, Vick (last name unknown) was hired at the same time as Carrington but was formally promoted to management while she was only given the management duties and responsibilities without the pay or title to go with it. Carrington also knew other examples, such as when a female coworker, Virginia Cannin, was rejected for a management position in favor of a less experienced male given the promotion.

110.    Plaintiff Carrington was subject to the "word-of-mouth" promotion process that did not post or announce promotion opportunities or provide a formal application process which is set forth above in paragraphs 40, 44-45,49-50, 53-72 of this Complaint. She was interested in promotion to management positions and training, including, without limitation, Manager Trainee and Assistant Store

Manager. She made known her interest in such promotion opportunities through the limited means that Wal-Mart made available.

111.   Based on her knowledge and experience from working at Wal-Mart, as set forth more fully above, Plaintiff Carrington had personal knowledge of the qualifications necessary to perform and be promoted to the jobs she sought or was interested in filling, as well as personal knowledge of the fact that she possessed and satisfied such qualifications. *See* ¶73 above. She was nevertheless denied such promotions and they were given instead to male employees.

112.   *Yolanda Christian:* Ms. Christian began her employment in July 2000 in Walmart Store #483, located in Prattville, Alabama. She left Wal-Mart around October 2001 to join the military.

113.   Once hired, Christian learned that the men hired in similar jobs at the time she was hired were paid more than her for the same work and jobs. Plaintiff Christian's store and employment were subject to the compensation and promotion policies and practices for Region 6 that are set forth in paragraphs 15-25, 36, 39-72 of this Complaint. Because of her gender, she was paid less than she should have been paid, and that similarly situated male employees have been paid, due to the disparate impact of Wal-Mart's compensation policies and practices set forth in paragraphs 15-25, 34-36, 53-61, 65-67 above, each of which paragraphs are hereby

specifically restated verbatim and incorporated by reference as part of Plaintiff Christian's  facts and claims in this case.

114.   Both men and women were hired at the same time as Christian, but the vast majority of the women were restricted to traditionally female jobs like cashier, while men became stockers. Like the other Plaintiffs, she was told that Wal-Mart prohibits employees from disclosing or discussing their pay with each other.

115.   ***Thearsa Collier:***  Ms. Collier was employed by Wal-Mart  in January 2000.  She had a Bachelor of Science degree and a Master's in Public Administration. Prior to working at Wal-Mart, Collier was in the United States Navy for nine years, and then she worked in retail. During her  tenure in the Navy, she worked in a pediatric trauma unit, was responsible for a $260,000 annual medical budget, and supervised as many as 40 people. She also received management leadership training in two separate courses entitled Total Quality Leadership and Total Quality Management. After her honorable discharge from the Navy as a Hospital Corpsman, Third Class,  she worked in retail as a sales associate for the Army Air Force Exchange Service (AAFES) where she received training in customer service, stocking, zoning and other retail operations.

116.  Plaintiff Collier's store and employment were subject to the compensation and promotion policies and practices for Region 6 that are set forth in paragraphs 15-25, 36, 39-72 of this Complaint. Because of her gender, she was paid

less than she should have been paid, and that similarly situated male employees have been paid, due to the disparate impact of Wal-Mart's compensation policies and practices set forth in paragraphs 15-25, 34-36, 53-61, 65-67 above, each of which paragraphs are hereby specifically restated verbatim and incorporated by reference as part of Plaintiff Collier's  facts and claims in this case.

117.   Because both her father and brother had worked for Wal-Mart, Collier applied to be an Assistant Manager Trainee at Wal-Mart in November 1999.   In January 2000, Collier became an Assistant Manager Trainee at a Supercenter store in Crestview, Florida where she trained for sixteen weeks, received extensive training in hardlines, and praised for her performance, people skills and how fast she learned. Before finishing her training, she was involuntarily transferred to a store in Geneva, Alabama, which was 80 miles from where she lived and had requested to be assigned. She made that request because she had to take care of her elderly mother. Male employees confirmed to her that they had not been treated that way. Among others, Scott Suczes, told her that he was able to stay as an Assistant Manager in the store he trained in and that he had been allowed to transfer several times in order to make himself more knowledgeable and promotable; Mike Whittaker told her he was allowed to choose the Crestview store that he wanted; and David Moody, an Assistant Manager at Crestview, told her he was transferred to Ft. Walton Beach at his request.

118.    When Collier was assigned to the Geneva, Alabama store in April 2000, she became the Assistant Manager over the traditionally female softlines operations of the store and a male Assistant Manager, Carl Gassett, was assigned to the traditionally male hardlines operations. In her training, Collier was told the such duties would be rotated so that she would be experienced in both hardlines and softlines, but she was never allowed to rotate or manage hardlines. Collier preferred hardlines managers over hardlines were normally promoted faster and given more opportunities for promotion. During a managerial meeting, Collier's District Manager Judy Langford, raised this issue with the Store Manager, Steve Lawrence, by asking him why he always put the female Assistant Managers  in  softlines. Lawrence answered that he did so "because that's what women know." No corrective action was ever taken regarding such openly gender bias or stereotypes, and Collier never was placed in charge of hardlines.

119.    The same Store Manager, Steve Lawrence, also blocked Collier's attendance at the leadership training school. Once again, her District Manager took issue with that action but nothing changed. Collier was not allowed to attend the leadership training.   Instead, the Store Manager sarcastically told Collier with obvious contempt and a tone of disgust that he was sure that she would go far anyway because she was   "black" and a "woman". His gender and racial bias was unmistakeable to Collier.  As further evidence of his gender bias, Lawrence  yelled

at Collier in a harsh tone on nearly a daily basis and embarrassed her in front of her co-workers who she was in charge of supervising. When Collier questioned her treatment, Lawrence told her "We're all rednecks here, so you might as well get used to it." In contrast, the male Assistant Manager, Carl Gassett, was never treated that way even though he made frequent mistakes and often could not work a register properly. Lawrence would merely respond  "that's just Carl." Nothing was ever done about such abusive treatment even after Wal-Mart determined that Lawrence had, in fact, made such biased statements to Collier and treated her  in that fashion.  Collier reported her mistreatment to Wal-Mart, but noting was ever done to correct it.

120.    Because of her continued need to help her mother, Collier requested to be transferred back to Florida. She made the request to Steve Lawrence, but was denied for no good reason. In August 2000, Collier wrote a letter to the President and CEO of Wal-Mart complaining of discrimination based on gender and race. She never received any response to this Open Door effort. Rather than transferring her nearer her mother, and after she reported her continued mistreatment by Steve Lawrence, Collier was told that she would be transferred to a store in Thomasville, Georgia, which was three hours from where her mother lived and needed care.

121.   Plaintiff  Collier has been denied promotions because of her gender and the disparate impact of Wal-Mart's promotion policies and practices set forth in paragraphs 39-72 above, each of which paragraphs are hereby specifically restated

verbatim and incorporated by reference as part of Plaintiff Collier's facts and claims in this case.

122.    Plaintiff Collier was subject to the "word-of-mouth" promotion process that did not post or announce promotion opportunities or provide a formal application process which is set forth above in paragraphs 40-44, 49-50, 53-72 of this Complaint. She made known her interest in the Store Manager and/or Co-Manager and other Assistant Store Managers opportunities through the limited means that Wal-Mart made available.

123.    Based on her knowledge and experience from working at Wal-Mart, as set forth more fully above, Plaintiff Collier had personal knowledge of the qualifications necessary to perform and be promoted to the jobs she sought or was interested in filling, as well as personal knowledge of the fact that she possessed and satisfied such qualifications. *See* ¶73 above. She was nevertheless denied such promotions and they were given instead to male employees.

124.    As a result of this cumulative mistreatment and Wal-Mart's refusal to do anything about it, Collier told Wal-Mart that she was resigning for a job with better opportunities and because she realized that Wal-Mart would not listen to her concerns about gender discrimination and had retaliated against her for expressing such concerns.

125. ***Alfreda Irving:***  Ms. Irving began her employment in October 1998, as a Cashier in Walmart Store #1174, located in Thomasville, Alabama. She was promoted to Customer Service Manager on October 30, 1999, and subsequently became a Photo Specialist on August 11, 2001. She left Wal-Mart in December 2003.

126.   Although she supervised employees as a Customer Service Manager beginning in 1999, males were hired at starting pay rates that were significantly more than she was paid even despite having less experience and working in lower level positions. For instance, Irving discovered that Robert Shields was hired as an overnight stocker with a starting pay rate that was $0.25 per hour more than what she was paid as a supervisor, and despite the fact that she had been working at Wal-Mart for approximately four years. Male employees admitted during discussions in the breakroom that they they were paid more than Irving and other women for the same or lower level jobs and work. When she left Wal-Mart in December 2003, she was still being paid only $7.80 per hour despite having been employed for nearly seven years.

127.  Plaintiff Irving's store and employment were subject to the compensation and promotion policies and practices for Region 6 that are set forth in paragraphs 15-25, 36, 39-72 of this Complaint. Because of her gender, she was paid less than she should have been paid, and that similarly situated male employees have

been paid, due to the disparate impact of Wal-Mart's compensation policies and practices set forth in paragraphs 15-25, 34-36, 53-61, 65-67 above, each of which paragraphs are hereby specifically restated verbatim and incorporated by reference as part of Plaintiff Irving's  facts and claims in this case.

128.   Irving, however, was unable to discover all the instances of pay disparities between her and her male peers because Wal-Mart had a strict policy against employees discussing their pay or promotion opportunities and they were subject to punishment if they were caught disclosing such information.

129.   The cashier and other traditionally male jobs continued to be predominantly and disproportionately assigned to females; there were relatively few males in such jobs. Women were relegated to the lower paying positions, while men were assigned to the traditionally higher paying male jobs and departments. For instance, the vast majority of the department managers and other managers were men even though women were a majority of the store as a whole.

130.   Plaintiff  Irving also has been denied promotions because of her gender and the disparate impact of Wal-Mart's promotion policies and practices set forth in paragraphs 39-72 above, each of which paragraphs are hereby specifically restated verbatim and incorporated by reference as part of her  facts and claims in this case. Irving expressed her interest in being promoted to management positions to her Managers and Supervisors, and applied for many different such promotions through

the limited means Wal-Mart made available, including, without limitation, Department Manager, Support Manager, Manager Trainee, and Assistant Store Manager positions.

131.   Men who had less experience than her were disproportionately selected for the positions she sought. For example, a support manager position she sought was given to Ira Todd, a male, and a department manager position she applied for was given to another male, Robert Griffin. Irving applied and/or requested to be considered for at least three Department Manager positions that were given to Griffin, including the Department Manager, Department #91 (Frozen Food) promotion in January 2001 and the Department Manager #14 (Housewares) promotion in December 2003.

132.   When she complained to management about men always being promoted over her, she was told that she "asked too many questions, and should keep her mouth shut."  She also repeatedly heard male managers express bias against putting women in traditionally male management and other positions, pronouncing that "men can do things that women cannot do," to explain why women did not receive such management positions. When she requested promotion into the Manager-in-Training program, the only response she received was that someone would get in touch with her. However, that never happened. She was never

interviewed or given a chance to explain her qualifications for management positions and the Manager-in-Training program.

133.   Plaintiff Irving was subject to the "word-of-mouth" promotion process that did not post or announce promotion opportunities or provide a formal application process which is set forth above in paragraphs 40, 44-45, 49-50, 53-72 of this Complaint. She made known her interest in such promotion opportunities through the limited means that Wal-Mart made available.

134.   Based on her knowledge and experience from working at Wal-Mart, as set forth more fully above, Plaintiff Irving in had personal knowledge of the qualifications necessary to perform and be promoted to the jobs she sought or was interested in filling, as well as personal knowledge of the fact that she possessed and satisfied such qualifications. *See* ¶73 above. She was nevertheless denied such promotions and they were given instead to male employees.

135.   ***Diana McCord:***   Ms. McCord worked at Store #1101 located in Wetumpka, Alabama as a Cashier from May 31, 1990 until she resigned on July 14, 2000. During her employment, she discovered that men were paid more than her for performing the same or similar jobs or work. For example, she  learned that Duane Ellis, a male co-worker, was being paid more than her for the same or similar work in in her department — the electronics department — even though he had not yet graduated from high school and she had a college degree and had been working for

Wal-Mart for years more than him. Duane Ellis was not only paid more than her in the electronics department, but management went so far as to ask her to train Ellis for the department manager position that she had been seeking for some time. She responded by saying that she should not have to train a young man who had less experience, less years of service, substantially less education, and who needed her help and training just to be able to minimally perform the job. She also had been successfully performing the department manager duties up to that time. When she asked why she was being asked to train Ellis to take the job she deserved and had worked hard to obtain, the only response from management was that men did not want to work for or take orders from a woman. The promotion to the traditionally male job of Electronics Department Manager was then given to Ellis rather than Diana McCord. On other occasions the same pattern occurred — men, and especially young men who were coming directly out of high school, were selected for traditionally male managerial positions over McCord despite the fact that she had more experience, more education, and better qualifications  due to her longer and more varied years of service at Wal-Mart.

136.  Plaintiff McCord's store and employment were subject to the compensation and promotion policies and practices for Region 6 that are set forth in paragraphs 15–25, 36, 39-72  of this Complaint. Because of her gender, she was paid less than she should have been paid, and that similarly situated male employees have

been paid, due to the disparate impact of Wal-Mart's compensation policies and practices set forth in paragraphs 15-25, 34-36, 53-61, 65-67 above, each of which paragraphs are hereby specifically restated verbatim and incorporated by reference as part of Plaintiff  McCord's  facts and claims in this case.

137.   During her nine years at Wal-Mart, McCord also expressed her interest in being promoted to management positions by telling her managers and supervisors and applying to the extent permitted by the restricted means made available by Wal-Mart. This included expressing her interest in being promoted to management positions and training to Store Manager Gregg and various Assistant Managers over her. Among other positions, she applied for Assistant Store Manager and Manager Trainee positions that were subsequently given to less experienced men. She never received an interview for any traditionally male managerial jobs or opportunities. She experienced and observed women predominantly and disproportionately being assigned to traditionally female positions such as cashier while men were given the traditionally male higher paying positions associated with their gender.

138.   Plaintiff McCord has been denied promotions because of her gender and the disparate impact of Wal-Mart's promotion policies and practices set forth in paragraphs 39-72 above, each of which paragraphs are hereby specifically restated verbatim and incorporated by reference as part of Plaintiff McCord's facts and claims in this case.

139.   Based on her knowledge and experience from working at Wal-Mart, as set forth more fully above, Plaintiff McCord had personal knowledge of the qualifications necessary to perform and be promoted to the jobs she sought or was interested in filling, as well as personal knowledge of the fact that she possessed and satisfied such qualifications. *See* ¶73 above. She was nevertheless denied such promotions and they were given instead to male employees.

140.   ***Debra Prescott:***  Ms. Prescott began her employment in October 1992, as a part-time Associate in Walmart Store #1260, located in Lucedale, Mississippi. She voluntarily resigned her employment in February 1994 was rehired in August 1994 as an Associate in the same store (#1260).  She left Wal-Mart on December 3, 2002.

141.   While serving as Department Manager of the Automotive Department, Prescott discovered that her male predecessor in that job, Stanley Stringfield, was paid more than her for the same duties, responsibilities and work. He was paid at least $30,000 per year while she was never paid more than $27, 000. Another male Department Manager in the Automotive department, Jeremy Howard,  let her know that he too was paid more than her for the same or lesser job. Tim Dorothy was another male manager who was paid more than Prescott for the same or similar job and work.

142. Plaintiff Prescott's store and employment were subject to the compensation and promotion policies and practices for Region 6 that are set forth in paragraphs 15-25, 36, 39-72 of this Complaint. Because of her gender, she was paid less than she should have been paid, and that similarly situated male employees have been paid, due to the disparate impact of Wal-Mart's compensation policies and practices set forth in paragraphs 15-25, 34-36, 53-61, 65-67 above, each of which paragraphs are hereby specifically restated verbatim and incorporated by reference as part of Plaintiff Prescott's facts and claims in this case.

143. Ms. Prescott often heard Managers make rude and derogatory comments about women. She utilized Wal-Mart's Open Door policy to complain about such gender bias, but nothing was ever done to redress or correct it and it continued.

144. When Prescott was hired, she was told not to disclose or discuss her pay with other employees. As part of her employee training, Wal-Mart made Ms. Prescott watch videos that instructed employees to not talk about pay increases, pay differences, or promotions. She was also instructed by Wal-Mart's Human Resource Department to not discuss or disclose pay issues with anyone else. This same prohibition was announced and enforced by Store Manager Richard Euband, District Manager Stanley Stringfellow, Manager Tim Dorothy, Miranda Hays, and HR representative   Renny (Last Name Unknown). Because Wal-Mart prohibited

employees from discussing pay with each other, Prescott was unable to discover all of the pay disparities between her and her male peers.

145.   Plaintiff Prescott has been denied promotions because of her gender and the disparate impact of Wal-Mart's promotion policies and practices set forth in paragraphs 39-72 above, each of which paragraphs are hereby specifically restated verbatim and incorporated by reference as part of Plaintiff Prescott's facts and claims in this case.   Among other practices, Wal-Mart imposed a requirement that required candidates for hiring or promotion to be able to lift and carry a certain amount of weight— an amount that had disparate impact on women and was not necessary to perform the jobs subject to such requirement. In addition, men were often exempted from such lifting requirement and such exceptions had disparate impact on women too.

146. Ms. Prescott learned from her own observation and experience that men were disproportionately favored over women for traditionally male promotions.  She told her managers that she was very interested in being promoted to management positions and being accepted into the Management Training Program. Among others, she expressed her interest to her own Manager (name forgotten).  Promotion opportunities were often given to men before they were even known to exist or women could apply.

147.   Unlike her male peers who were quickly moved into the Management Trainee program and management positions with little or no effort, Prescott was denied such opportunity and training for more than a year.  After over a year of attempting to be admitted into the Management-in-Training program she was eventually accepted and awarded a Department Manager position for a brief period of time on October 11, 1998, albeit for less pay than men performing the same job and work.

148.   Ms. Prescott also expressed interest in a position in the Cash Office to her  Store Manager, Richard Eubanks, but she was not considered or selected for that opening.

149.   Plaintiff   Prescott was subject to the "word-of-mouth" promotion process that did not post or announce promotion opportunities or provide a formal application process which is set forth above in paragraphs 40, 44-45,49-50, 53-72 of this Complaint. She made known her interest in such promotion opportunities through the limited means that Wal-Mart made available.

150.   Based on her knowledge and experience from working at Wal-Mart, as set forth more fully above, Plaintiff Prescott had personal knowledge of the qualifications necessary to perform and be promoted to the jobs she sought or was interested in filling, as well as personal knowledge of the fact that she possessed and

satisfied such qualifications. *See* ¶73 above. She was nevertheless denied such promotions and they were given instead to male employees.

151. ***Debra Flake:***  Ms. Flake was employed at Wal-Mart store #969 in Gulfport, Mississippi,  store # 1088 in Biloxi, Mississippi, and store # 2715 in Diberville, Mississippi. She resigned in May 2013.

152. Plaintiff Flake's store and employment were subject to the compensation and promotion policies and practices for Region 6 that are set forth in paragraphs 15-25, 36, 39-72 of this Complaint. Because of her gender, she was paid less than she should have been paid, and that similarly situated male employees have been paid, due to the disparate impact of Wal-Mart's compensation policies and practices set forth in paragraphs 15-25, 34-36, 53-61, 65-67 above, each of which paragraphs are hereby specifically restated verbatim and incorporated by reference as part of Plaintiff Flake's  facts and claims in this case.

153. Flake was paid $24,000 per year as an Optical Department Manager while males performing the same work at other stores in her district were paid $32,000 or more per year despite not being employed as long as her. She discovered this gender disparity when she saw the males' salaries on the profit and loss statements at the annual district meetings. This pay disparity continued throughout her initial employment with Wal-Mart through April 20, 2001. She was unable, however, to discover all the instances of pay disparities between her and her male

peers because Wal-Mart's Human Resources Department and Personnel Department had a strict policy against employees discussing their pay or promotion opportunities.

154.   Plaintiff Flake has been denied promotions because of her gender and the disparate impact of Wal-Mart's promotion policies and practices set forth in paragraphs 39-72 above, each of which paragraphs are hereby specifically restated verbatim and incorporated by reference as part of Plaintiff Flake's facts and claims in this case.

155.   After Flake returned to Wal-Mart in February 2010 as a pharmacy technician, she notified the appropriate officials that she wanted to be considered for management positions. She was interested in promotion to management positions and training, including, without limitation, Manager Trainee and Assistant Store Manager.  She also applied for open CSM positions, but was never selected despite her qualifications for such job.

156.   Plaintiff  Flake was subject to Wal-Mart's "word-of-mouth" promotion process that did not post or announce promotion opportunities or provide a formal application process which is set forth above in paragraphs  40, 44-45, 49-50, 53-72 of this Complaint. She made known her interest in such promotion opportunities through the limited means that Wal-Mart made available.

157.    Based on her knowledge and experience from working at Wal-Mart, as set forth more fully above, Plaintiff Flake had personal knowledge of the qualifications necessary to perform and be promoted to the jobs she sought or was interested in filling, as well as personal knowledge of the fact that she possessed and satisfied such qualifications. *See* ¶73 above. She was nevertheless denied such promotions and they were given instead to male employees.

158.    *Jocelyn Williams:*   Ms. Williams began working for Wal-Mart in March 2007 at Wal-Mart Store #4407 in Montgomery, Alabama. She had ten years of prior management experience before joining Wal-Mart and was initially hired by Wal-Mart and as an hourly Customer Service Manager.

159.    During her employment she discovered that men were paid more than her for performing the same or similar jobs and work. For example, three male employees — Earl Ware, Kaderek Courtland, and JT (last name unknown).— disclosed that they were being paid more and getting higher pay raises than her for the same or similar jobs and work. Ware and Courtland were hired after her,  had less experience than her, and were  paid more than her for performing the same job and work even though she had  been performing the job much longer. Earl Ware came was first hired at Wal-Mart approximately six months after Jocelyn Williams. Similarly, JT was hired around the same time as her, but started at a higher pay rate.

160.   Plaintiff Jocelyn Williams' store and employment were subject to the compensation and promotion policies and practices for Region 6 that are set forth in paragraphs 15-25, 36, 39-72 of this Complaint. Because of her gender, she was paid less than she should have been paid, and that similarly situated male employees have been paid, due to the disparate impact of Wal-Mart's compensation policies and practices set forth in paragraphs 15-25, 34-36, 53-61, 65-67 above, each of which paragraphs are hereby specifically restated verbatim and incorporated by reference as part of  Jocelyn Williams'  facts and claims in this case.

161.   During her tenure at Wal-Mart, she expressed her interest in being promoted to management positions to her Managers and Supervisors. For example, she  applied for an Assistant Manager position and tried to enter the Management Training Program at the same time as two males —Earl Ware and JT (last name unknown). Both Ware and JT were promoted into the program over Jocelyn Williams even though both men had less experience and were hired after her. She complained to her co-manager, Woody (last name unknown), but nothing was done. In her experience and observation, management usually already knew who they wanted to fill a position before the vacancy occurred and would speak privately with that person about the opening before anyone else could request consideration. Men were favored for traditionally male jobs and departments, while women had few opportunities other than in the lower paying, traditional "female" jobs and

departments. Jocelyn Williams was discouraged from seeking promotions to traditional "male" jobs and departments like those in Electronics, Sports, etc. Male departments were the highest paid department.

162.    Her opportunities were subject to the "word-of-mouth" promotion process that did not post or announce promotion opportunities or provide a formal application process which is set forth above in paragraphs 40, 44-45, 49-50, 53-72 of this Complaint. She made known her interest in such promotion opportunities through the limited means that Wal-Mart made available.

163.    Jocelyn Williams has been denied promotions because of her gender and the disparate impact of Wal-Mart's promotion policies and practices set forth in paragraphs 39-72 above, each of which paragraphs are hereby specifically restated verbatim and incorporated by reference as part of Jocelyn Williams' facts and claims in this case. Wal-Mart also imposed weight lifting and carrying restrictions as a condition for obtaining various jobs and that requirement has disparate impact on women and otherwise discriminated them on the basis of gender.

164.    Based on her knowledge and experience from working at Wal-Mart, as set forth more fully above, Plaintiff Jocelyn Williams had personal knowledge of the qualifications necessary to perform and be promoted to the jobs she sought or was interested in filling, as well as personal knowledge of the fact that she possessed and

satisfied such qualifications. *See* ¶73 above. She was nevertheless denied such promotions and they were given instead to male employees.

165.    *Crystal Young:*  Ms. Young began her employment in April 2009, as a Cashier in Walmart Store #4581, located in Mobile.  She left Walmart in March 2012.

166.   A part-time male cashier named Elgin Smead began working for Wal-Mart after she did. Even though he was part-time and had not been there as long as she had, he made $9.00 per hour, which was more than her.  When  later working in the Customer Service Department, Jason Jeter and Robert (last name unknown) were paid $1.00 to $1.50 per hour more than her for the same or similar jobs and work. Plaintiff Crystal Young's store and employment were subject to the compensation and promotion policies and practices for Region 6 that are set forth in paragraphs 15-25, 36, 39-72 of this Complaint. Because of her gender, she was paid less than she should have been paid, and that similarly situated male employees have been paid, due to the disparate impact of Wal-Mart's compensation policies and practices set forth in paragraphs 15-25, 34-36, 53-61, 65-67 above, each of which paragraphs are hereby specifically restated verbatim and incorporated by reference as part of Plaintiff Young's  facts and claims in this case.

167.   Crystal Young applied for various promotions, including Customer Service Manager and Management Trainee.

168.   She was denied promotions because of her gender and the disparate impact of Wal-Mart's promotion policies and practices set forth in paragraphs 39-72 above, each of which paragraphs are hereby specifically restated verbatim and incorporated by reference as part of Plaintiff Young's  facts and claims in this case.

169.   Her promotion opportunities, however, were subject to the "word-of-mouth" promotion process that did not post or announce promotion opportunities or provide a formal application process which is set forth above in paragraphs 40, 44-45,49-50, 53-72  of this Complaint. She was interested in promotion to management positions and training, including, without limitation, Department Manager, Support Manager, Management Trainee and Assistant Store Manager.  She made known her interest in such promotion opportunities through the limited means that Wal-Mart made available.

170.   Based on her knowledge and experience from working at Wal-Mart, as set forth more fully above, Crystal Young had personal knowledge of the qualifications necessary to perform and be promoted to the jobs she sought or was interested in filling, as well as personal knowledge of the fact that she possessed and satisfied such qualifications. *See* ¶73 above. She was nevertheless denied such promotions and they were given instead to male employees.

171.   ***Betty Ruth Cooper:*** Ms. Cooper  had a background in retail management before she started working at Wal-Mart. She began working at Wal-

Mart store #483 in Prattville. Alabama in 1989 and left Wal-Mart's employ on October 28, 1999 to take a job with better pay and promotional opportunities.

172.   From 1996 until the end of her employment in 1999, she worked as a department manager of the Health and Beauty Aids department. Men performed the same tasks she performed but were known to be payed more than her and promoted more often.  Men would discuss their pay and promotions in Cooper's presence in the employee break room. For example, Cooper found out that another department manager in the same store, Bob Lewis, was paid more than her for the same work and had been hired at  $14 - $15 per hour. even though he had no retail management experience. Cooper was making only $11 per hour at that time even though she had many more years of retail management experience at Wal-Mart than Lewis did. She knew from working in the same store that Bob Lewis performed the same work as she did and that he had no prior management experience.

173.   Although she had been a successful department manager since 1990, an Assistant Store Manager over her, Dennis Roberts, openly stated that "a woman's place is at home," that "women can't do their jobs like men can",  and that "it is a man's job to bring home the money." Cooper's successor as department manager, Chris Myers, was also paid more than her for the exact same job. The Manager making this decision similarly stated that men could do a better job than women. Also men routinely received $0.40 - $0.50 yearly raises, while Cooper and other

women only received only $0.20 to $ 0.25 annual raises. Cooper complained about all such pay disparities to her store manager. Wal-Mart's only response was  "that's just the way it is." Nothing changed.

174.  Plaintiff Cooper's store and employment were subject to the compensation and promotion policies and practices for Region 6 that are set forth in paragraphs 15-25, 36, 39-72 of this Complaint. Because of her gender, she was paid less than she should have been paid, and that similarly situated male employees have been paid, due to the disparate impact of Wal-Mart's compensation policies and practices set forth in paragraphs 15-25, 34-36, 53-61, 65-67 above, each of which paragraphs are hereby specifically restated verbatim and incorporated by reference as part of Plaintiff Cooper's  facts and claims in this case.

175.  Cooper was unable, however, to discover all the instances of pay disparities between her and her male peers because Wal-Mart had a strict policy against employees discussing their pay or promotion opportunities.

176.  Plaintiff Cooper has been denied promotions because of her gender and the disparate impact of Wal-Mart's promotion policies and practices set forth in paragraphs 39-72 above, each of which paragraphs are hereby specifically restated verbatim and incorporated by reference as part of Plaintiff Cooper's  facts and claims in this case.  She was interested in promotion to management positions and training, including, without limitation, Manager Trainee and Assistant Store Manager.

177.   Based on her knowledge and experience from working at Wal-Mart, as set forth more fully above, Plaintiff Cooper had personal knowledge of the qualifications necessary to perform and be promoted to the jobs she sought or was interested in filling, as well as personal knowledge of the fact that she possessed and satisfied such qualifications. *See* ¶73 above. She was nevertheless denied such promotions and they were given instead to male employees.

178.   *Carol Gonzales:*  Ms. Gonzalez began her employment with Wal-Mart as an Overnight Stocker in Walmart Store #935, located in Denham Springs, Louisiana. She also served as a Department Manager beginning December 5, 1998. In February 2002, Ms. Gonzales transferred to Store #3288, located in Baton Rouge, Louisiana, as a Sales Associate where she served as a Remodel Setup Associate and Sales Associate position in October 2008. She left Wal-Mart in February 2010 because her husband passed away.

179. Gonzalez was paid less than male Department Managers who performed the same duties and responsibilities as her. For example, the male stationary department manager, Jason Harmen, was paid more than she was for that same position even though he was given that job with little or no knowledge of stationary or how to operate the stationary department. Gonzalez had to train him and perform his work for him while being paid significantly less per hour than he was. She complained to management about Harmen not being able to perform his

job as stationary department manager and her pay disparity compared to him, but nothing was done about it. Gonzalez also learned that she was paid less than the stationary Department Manager than the male stationary Department Manager at store #3288 when she transferred to the stationary department of that store in 2005.

180.   Because employees were prohibited from talking about their pay or promotion opportunities and were subject to punishment if they were caught disclosing such information, Gonzalez was unable  to discover all the instances of pay disparities between her and her male peers.

181.   Plaintiff Gonzalez's store and employment were subject to the compensation and promotion policies and practices for Region 6 that are set forth in paragraphs15-25, 36, 39-72 of this Complaint. Because of her gender, she was paid less than she should have been paid, and that similarly situated male employees have been paid, due to the disparate impact of Wal-Mart's compensation policies and practices set forth in paragraphs 15-25, 34-36, 53-61, 65-67 above, each of which paragraphs are hereby specifically restated verbatim and incorporated by reference as part of Plaintiff Gonzalez's  facts and claims in this case.

182.   Plaintiff Gonzalez also has been denied promotions because of her gender and the disparate impact of Wal-Mart's promotion policies and practices set forth in paragraphs 39-72 above, each of which paragraphs are hereby specifically

restated verbatim and incorporated by reference as part of Plaintiff Gonzalez's facts and claims in this case.

183.   Gonzalez also did not apply for the Management Training Program because she had witnessed many women apply for traditionally male managerial positions, only to be turned down in favor of less experienced men with less qualifications.  Women were only able to promote into traditionally female positions in departments like cosmetics and lingerie.

184.  Plaintiff Gonzalez was subject to the "word-of-mouth" promotion process that did not post or announce promotion opportunities or provide a formal application process which is set forth above in paragraphs 40, 44-45,49-50, 53-72 of this Complaint.  She was interested in promotion to management positions and training, including, without limitation, Manager Trainee and Assistant Store Manager. She made known her interest in such promotion opportunities through the limited means that Wal-Mart made available.

185.   Based on her knowledge and experience from working at Wal-Mart, as set forth more fully above, Plaintiff Gonzalez had personal knowledge of the qualifications necessary to perform and be promoted to the jobs she sought or was interested in filling, as well as personal knowledge of the fact that she possessed and satisfied such qualifications. *See* ¶73 above. She was nevertheless denied such promotions and they were given instead to male employees.

71

186.   *Mae Francis Griffin:*   Ms. Griffin began her employment at Wal-Mart in May 2009, as a Modular/Price Change Team Associate in Walmart Store #5348, located in Montgomery, Alabama. She  also worked as an Inventory Associate and Overnight Stocker.

187.  While working as an overnight stocker, Griffin discovered that Wal-Mart was hiring men as overnight stockers at starting rates of pay that was more than she was being paid for the same job and work. She knew this because several male overnight stockers told her what they were being paid for the same job. Griffin complained to management about such gender disparities in pay and that she did not receive a pay raise normally occurred after the 90-day evaluation that she had been promised. The only response she received from management  was a false statement that Wal-Mart had stopped that practice.

188.  Like the other Plaintiffs, however, Griffin was unable to discover all the instances of pay disparities between her and her male peers because  employees were prohibited from talking about their pay or promotion opportunities and were subject to punishment if they were caught disclosing such information.

189.  Plaintiff Griffin's store and employment were subject to the compensation and promotion policies and practices for Region 6 that are set forth in paragraphs  15-25, 36, 39-72 of this Complaint. Because of her gender, she was paid less than she should have been paid, and that similarly situated male employees have

been paid, due to the disparate impact of Wal-Mart's compensation policies and practices set forth in paragraphs 15-25, 34-36, 53-61, 65-67 above, each of which paragraphs are hereby specifically restated verbatim and incorporated by reference as part of Plaintiff Griffin's facts and claims in this case.

190.   Plaintiff Griffin has been denied promotions because of her gender and the disparate impact of Wal-Mart's promotion policies and practices set forth in paragraphs 39-72 above, each of which paragraphs are hereby specifically restated verbatim and incorporated by reference as part of Plaintiff Griffin's facts and claims in this case.

191.   Griffin expressed interest in being promoted to management positions to her supervisors and tried to apply for those positions. She made her request to be considered for the management in training program to her male supervisor, Chandler Wilson, around October or November 2009. She also took and passed the test and questionnaire for entry to the MIT position and program. Wilson told her that she could not apply because she had "points on her record" for having to be absent to take care of her children who were diagnosed with H1N1 flu. However, a similarly situated male overnight stocker, Darryl (last name unknown), was allowed to apply and was promoted to department manager in December 2009 or January 2010, even though he too had points on his record. In her experience and observation, no female

overnight stockers were allowed to enter the management training program or promote to management positions.

192.   Plaintiff Griffin was subject to the "word-of-mouth" promotion process that did not post or announce promotion opportunities or provide a formal application process which is set forth above in paragraphs 40, 44-45, 49-50, 53-72 of this Complaint. She was interested in promotion to management positions and training, including, without limitation, Department Manager, Support Manager, Management Trainee and Assistant Store Manager.  She made known her interest in such promotion opportunities through the limited means that Wal-Mart made available.

193.   Based on her knowledge and experience from working at Wal-Mart, as set forth more fully above, Plaintiff Griffin had personal knowledge of the qualifications necessary to perform and be promoted to the jobs she sought or was interested in filling, as well as personal knowledge of the fact that she possessed and satisfied such qualifications. *See* ¶73 above. She was nevertheless denied such promotions and they were given instead to male employees.

194.   ***Brittany Johnson:***  Ms. Johnson began her employment on November 23, 2005, as a Cashier in Walmart Store #1066, located in Pascagoula, Mississippi. She left Wal-Mart in September 2008.

195. Brittany Johnson learned from a male cashier, Andy (last name unknown), that he was being paid more than she and other female cashiers despite the fact that he was in still in high school and had no more or different same experience or qualifications than she did. The only reason she was given for that pay disparity was that as a male he could probably do physical tasks that women could not do. Johnson knew from working with Andy as a Cashier that this was a sexual stereotype because there were no physical tasks associated with their shared Cashier job that she could not do or that Andy could do better than her.

196. Brittany Johnson's store and employment were subject to the compensation and promotion policies and practices for Region 6 that are set forth in paragraphs 15-25, 36, 39-72 of this Complaint. Because of her gender, she was paid less than she should have been paid, and that similarly situated male employees have been paid, due to the disparate impact of Wal-Mart's compensation policies and practices set forth in paragraphs 15-25, 34-36, 53-61, 65-67 above, each of which paragraphs are hereby specifically restated verbatim and incorporated by reference as part of Brittany Johnson's facts and claims in this case.

197. Brittany Johnson was unable to discover all the instances of pay disparities between her and her male peers because Wal-Mart had a strict policy against employees discussing their pay or promotion opportunities and they were subject to punishment if they were caught disclosing such information.

198.   During her work for Wal-Mart, Brittany Johnson expressed her interest in being promoted to management positions to her Managers and Supervisors, and she applied for various promotions through the limited means Wal-Mart made available. She was interested in promotion to management positions and training, including, without limitation, Department Manager, Support Manager, Management Trainee and Assistant Store Manager. Wal-Mart, however, did not post or announce management vacancies and opportunities and had no application process for promotions to Manager in Training, or Assistant Manager and other management positions.

199.   Brittany Johnson was subject to the "word-of-mouth" promotion process that did not post or announce promotion opportunities or provide a formal application process which is set forth above in paragraphs  40, 44-45, 49-50, 53-72 of this Complaint. She made known her interest in such promotion opportunities through the limited means that Wal-Mart made available.

200.   Brittany Johnson has been denied promotions because of her gender and the disparate impact of Wal-Mart's promotion policies and practices set forth in paragraphs  39-72 above, each of which paragraphs are hereby specifically restated verbatim and incorporated by reference as part of Brittany Johnson's facts and claims in this case.

201.   Based on her knowledge and experience from working at Wal-Mart, as set forth more fully above, Brittany Johnson had personal knowledge of the qualifications necessary to perform and be promoted to the jobs she sought or was interested in filling, as well as personal knowledge of the fact that she possessed and satisfied such qualifications. *See ¶*73 above. She was nevertheless denied such promotions and they were given instead to male employees.

202.   ***Carol Kopacz:*** Ms. Kopacz first worked for Wal-Mart at store #1222 in Pensacola, Florida from around October 1999 to around January 2001. She returned to Wal-Mart at the same store in March 2009, as a Money Center Cashier and resigned four months later for health reasons caused by standing too long on her feet. During her tenure at Wal-Mart, the cashier and other traditionally female jobs were predominantly and disproportionately assigned to women.

203.   During her work for Wal-Mart, Kopacz discovered that similarly situated male employees were being hired at starting pay rates that were significantly more than she was paid for the same or similar jobs work even though they had less experience and sometimes worked in lower level positions. For example, Tom Sherman was hired after her sometime in late 2000 with a starting pay rate of $10 per hour for the exact same job and work. That starting wage of $10 per hour was was considerably more than Carol Kopacz was ever paid for the same job for which she had more experience and years of service. Even as late as nine years later in

2009, she was still being paid just $7.85 per hour for the same or similar work as Sherman. She knew of this pay disparity because Tom Sherman told her his starting pay while he was training at her store.

204.   In addition, Kopacz discovered that another man, Jason Ball, was paid a dollar  more than her per hour despite having originally been hired as a cashier in the same two week period as her and having no greater experience, duties or responsibilities.  Jason Ball was promoted to Customer Service Manager despite the fact that he had not been working for 6 months. Eventually, he transferred to the loading dock position, which is how she discovered the $1 per hour shift differential.

205.   Plaintiff Kopacz's store and employment were subject to the compensation and promotion policies and practices for Region 6 that are set forth in paragraphs 15-25, 36, 39-72 of this Complaint. Because of her gender, she was paid less than she should have been paid, and that similarly situated male employees have been paid, due to the disparate impact of Wal-Mart's compensation policies and practices set forth in paragraphs 15-25, 34-36, 53-61, 65-67 above, each of which paragraphs are hereby specifically restated verbatim and incorporated by reference as part of Plaintiff Kopacz's  facts and claims in this case.

206.   Plaintiff Kopacz also has been denied promotions because of her gender and the disparate impact of Wal-Mart's promotion policies and practices set forth in paragraphs  39-72 above, each of which paragraphs are hereby specifically restated

verbatim and incorporated by reference as part of Plaintiff Kopacz's facts and claims in this case.

207.     During her work for Wal-Mart, Ms. Kopacz expressed her interest in being promoted to management positions to the appropriate officials, including, without limitation, Department Manager, Support Manager, Management Trainee, and Assistant Store Manager. For example, she sought the promotion to Customer Service Manager that was given to Jason Ball. Although Ball had been hired at approximately the same time as her, he was quickly promoted to Customer Service Manager within two weeks of being initially hired, and despite not being eligible for promotion because he had not yet served the six months in his existing position that Wal-Mart applied against Kopacz. She was denied that same promotion and others on the pretext that she had not yet served the requisite six months in the very same entry level position as Ball. Unlike Ball, she was told that in order to transfer to another department or to receive a promotion, employees had to first work in their current position for a minimum of six months. Jason Ball, however, was promoted to Customer Service Manager notwithstanding the fact that he had never served six months in his current job and had only been hired two weeks earlier.

208.  Plaintiff Kopacz was adversely affected by Wal-Mart's "word-of-mouth" promotion process that did not post or announce promotion opportunities or provide a formal application process which is set forth above in paragraphs 40, 44-

45,49-50, 53-72 of this Complaint. She was interested in promotion to management positions and training, including, without limitation, Department Manager, Support Manager, Management Trainee, Assistant Store Manager and Store Manager or Co-Manager. She made known her interest in such promotion opportunities through the limited means that Wal-Mart made available.

209. Based on her knowledge and experience from working at Wal-Mart, as set forth more fully above, Plaintiff Kopacz had personal knowledge of the qualifications necessary to perform and be promoted to the jobs she sought or was interested in filling, as well as personal knowledge of the fact that she possessed and satisfied such qualifications. *See* ¶73 above. She was nevertheless denied such promotions and they were given instead to male employees.

211. **Carolyn Love:** Ms. Love began work as a People Greeter on October 31, 1999 in Walmart Store #853, located in Mobile, Alabama. She resigned in March or April 2000.

212. During her employment she discovered that men were paid more than her for performing the same or similar jobs and work. For example, George (last name unknown) and other male employees told her what they were being paid for the same or similar work as she was assigned and those amounts were consistently more than what Wal-Mart paid her. George started in the same position around the same time as her but was paid significantly more for the same or similar jobs and

work. She knew from working with such men that they had no greater experience or years of service than her. The only reason she was ever given for the gender disparities in pay she discovered was when she was told by management that men should be paid more because they work harder and perform more work. Love complained to management about such male/female stereotypes because she knew from her own experience that she and other women were performing as much or more work than the men with whom they worked. For instance, women were required to gather shopping carts and bag groceries, while men in the same position did not perform such extra work. Wal-Mart, however, did nothing to respond to her complaint that women were not being paid equally to men for the same or similar work.

213. Plaintiff Love's store and employment were subject to the compensation and promotion policies and practices for Region 6 that are set forth in paragraphs 15-25, 36, 39-72 of this Complaint. Because of her gender, she was paid less than she should have been paid, and that similarly situated male employees have been paid, due to the disparate impact of Wal-Mart's compensation policies and practices set forth in paragraphs 15-25, 34-36, 53-61, 65-67 above, each of which paragraphs are hereby specifically restated verbatim and incorporated by reference as part of Plaintiff Love's  facts and claims in this case.

214.   Love, however, was unable to discover all the instances of pay disparities between her and her male peers because Wal-Mart had a strict policy against employees discussing their pay or promotion opportunities and were subject to punishment if they were caught disclosing such information.

215.   Love talked with her direct supervisor on several occasions about being promoted into management jobs, including, without limitation, a vacant shift manager position and various Manager-in-Training and Assistant Manager positions. She was told that it would be looked into, but she never heard back. George (last name unknown) was promoted to a managerial job that she sought and was better qualified to fill due to her prior management experience and qualifications.

216.   Plaintiff  Love was subject to the "word-of-mouth" promotion process that did not post or announce promotion opportunities or provide a formal application process which is set forth above in paragraphs  40, 44-45,49-50, 53-72 of this Complaint. She made known her interest in such promotion opportunities through the limited means that Wal-Mart made available.

217.   Plaintiff  Love has been denied promotions because of her gender and the disparate impact of Wal-Mart's promotion policies and practices set forth in paragraphs  39-72 above, each of which paragraphs are hereby specifically restated

verbatim and incorporated by reference as part of Plaintiff Love's  facts and claims in this case.

218.   Based on her knowledge and experience from working at Wal-Mart, as set forth more fully above, Plaintiff Love had personal knowledge of the qualifications necessary to perform and be promoted to the jobs she sought or was interested in filling, as well as personal knowledge of the fact that she possessed and satisfied such qualifications. *See* ¶73 above. She was nevertheless denied such promotions and they were given instead to male employees.

219.   ***Thelma Matthews:*** Ms. Matthews began her employment in October 1990 at Walmart Store #934, located in Daphne/Lake Forrest, Alabama. She became a Customer Service Manager on February 15, 1997 and a TLE Support Supervisor on October 17, 1998. She resigned in May 1999 because of the sex discrimination she experienced in wage and promotion opportunities.

220.   During her employment, Matthews discovered that men were paid more than her for performing the same or similar jobs and work. For example, a male department manager, Shane (last name unknown) was paid significantly more that she was paid for the same or similar job and work as Customer Service Manager and Tire Lube Support Manager. Shane and other male managers had the same or similar managerial duties and responsibilities as her jobs but they were paid as much or more than  $1 to $1.50 per hour more than her. Matthews was finally promoted to support

manager in tire lube express after several years of expressing that she would like to train in management. Even with the promotion she only received a \$.50 - \$ .75 raise.

221.  Plaintiff Matthew's store and employment were subject to the compensation and promotion policies and practices for Region 6 that are set forth in paragraphs 15-25, 36, 39-72 of this Complaint. Because of her gender, she was paid less than she should have been paid, and that similarly situated male employees have been paid, due to the disparate impact of Wal-Mart's compensation policies and practices set forth in paragraphs 15-25, 34-36, 53-61, 65-67 above , each of which paragraphs are hereby specifically restated verbatim and incorporated by reference as part of Plaintiff Matthews' facts and claims in this case.

222.  Matthews, however, was unable to discover all the instances of pay disparities between her and her male peers because employees were prohibited from talking about their pay or promotion opportunities and were subject to punishment if they were caught disclosing such information.

223.  Throughout the nearly nine years she worked at Wal-Mart, Matthews repeatedly requested assignment or promotion to various management positions. She expressed her interest in being assigned and promoted to management positions to her Managers, Co-Managers, Assistant Managers, and Department Managers through the limited means Wal-Mart made available. She told anyone who would listen that she wanted to be promoted into the Manager Trainee position and  the

84

Manager-in-Training program. She not only received no response from these managers who were predominantly male, but they did not even treat her requests for consideration seriously or answer her questions on how she could get information on the steps she needed to take to get considered for management positions or training.

224.   Plaintiff Matthews has been denied promotions because of her gender and the disparate impact of Wal-Mart's promotion policies and practices set forth in paragraphs 39-72 above, each of which paragraphs are hereby specifically restated verbatim and incorporated by reference as part of Plaintiff Matthews' facts and claims in this case.

225.   Plaintiff Matthews was subject to the "word-of-mouth" promotion process that did not post or announce promotion opportunities or provide a formal application process which is set forth above in paragraphs 40, 44-45, 49-50, 53-72 of this Complaint. She was interested in promotion to management positions and training, including, without limitation, Manager Trainee and Assistant Store Manager.

226.   Based on her knowledge and experience from working at Wal-Mart, as set forth more fully above, Plaintiff Matthews had personal knowledge of the qualifications necessary to perform and be promoted to the jobs she sought or was interested in filling, as well as personal knowledge of the fact that she possessed and

satisfied such qualifications. *See* ¶73 above. She was nevertheless denied such promotions and they were given instead to male employees.

227.   Men were mainly managers and it was difficult for women to become a manager because job postings were male oriented and called for certain lifting requirements or moving requirements even before someone could apply.  During her years at Wal-Mart, Matthews saw men being disproportionately promoted into management, but few, if any women being allowed to enter such traditionally male positions or the Manager-in-Training program. Matthews did not know of or see men working in traditionally female jobs such as as cashiers, service desk attendants, etc. which were disproportionately assigned to women. What she saw was men predominantly and disproportionately being given higher paying jobs in the higher paying areas of the store such as the grocery, automotive and hardware departments. Matthews often had to help men in these departments, performing the same work for less pay. Matthews and other lower paid women often had to train male sales associates who were paid more and then quickly promoted into management over them. Throughout her employment she trained many men (whose names she cannot recall at this time) for promotion into management. Other women at store #934 were similarly performing the same duties as the men in those departments while being paid at the lower rates associated with traditionally female jobs such as cashier.

228. ***Shonna Dale Nettles:*** Ms. Nettles began her employment as a Cashier in May 1997 at Walmart Store #1212, located in Saraland, Alabama. She worked as an hourly Customer Service Desk Associate and then as an hourly Optical Associate position.

229. During her tenure at Wal-Mart, Nettles expressed her interested in promotions to management positions and training, including without limitation, Customer Service Manager Department Manager, Support Manager and  Manager Trainee positions. She expressed such interest to her own Manager. Plaintiff Nettles was subject to the "word-of-mouth" promotion process that did not post or announce promotion opportunities or provide a formal application process as set forth above.

230. Plaintiff  Nettles has been denied promotions because of her gender and the disparate impact of Wal-Mart's promotion policies and practices set forth in paragraphs 39-72 above, each of which paragraphs are hereby specifically restated verbatim and incorporated by reference as part of Plaintiff Nettles'  facts and claims in this case.

231. Based on her knowledge and experience from working at Wal-Mart, as set forth more fully above, Plaintiff Nettles had personal knowledge of the qualifications necessary to perform and be promoted to the jobs she sought or was interested in filling, as well as personal knowledge of the fact that she possessed and

satisfied such qualifications. *See* ¶73 above. She was nevertheless denied such promotions and they were given instead to male employees.

232.   Managers would usually groom the male employee they wanted for the position without making any effort to let women know of the opportunity. Nettles was often discouraged by management from applying for promotions.

233.   Plaintiff Nettles' store and employment were subject to the compensation and promotion policies and practices for Region 6 that are set forth in paragraphs 15-25, 36, 39-72 of this Complaint. During Nettles employment, men were paid more than her for performing the same or similar jobs and work. Because of her gender, she was paid less than she should have been paid, and that similarly situated male employees have been paid, due to the disparate impact of Wal-Mart's compensation policies and practices set forth in paragraphs 15-25, 34-36, 53-61, 65-67 above, each of which paragraphs are hereby specifically restated verbatim and incorporated by reference as part of Plaintiff Nettles' facts and claims in this case.

234.   ***Sue Newman:***  Ms. Newman started work at Wal-Mart at store #1222 in Pensacola, Florida in 1988. She worked as an Associate for 13 years before being forced to leave in 2001 because of an on-the-job injury and worker's compensation claim.

235.   Men who were hired after her were paid more than her for the same or similar jobs and work.  Plaintiff  Newman's  store and employment were subject to

the compensation and promotion policies and practices for Region 6 that are set forth in paragraphs   15-25, 36, 39-72 of this Complaint. Because of her gender, she was paid less than she should have been paid, and that similarly situated male employees have been paid, due to the disparate impact of Wal-Mart's compensation policies and practices set forth in paragraphs 15-25, 34-36, 53-61, 65-67 above, each of which paragraphs are hereby specifically restated verbatim and incorporated by reference as part of Plaintiff Newman's facts and claims in this case.  Newman, however, was unable to discover all the specific  instances of such pay disparities between her and her male peers because Wal-Mart had a strict policy against employees discussing their pay or promotion opportunities.

236.   Newman also expressed her interest in being promoted to the better paying positions and departments traditionally assigned to male employees, such as Manager Trainee, Assistant Store Manager, Department or Support Manager, and other management positions and training opportunities.  She has been denied promotions because of her gender and the disparate impact of Wal-Mart's promotion policies and practices set forth in paragraphs 39-72 above, each of which paragraphs are hereby specifically restated verbatim and incorporated by reference as part of Plaintiff Newman's  facts and claims in this case.

237.  Plaintiff Newman was subject to the "word-of-mouth" promotion process that did not post or announce promotion opportunities or provide a formal

application process which is set forth above in paragraphs 40, 44-45,49-50, 53-72 of this Complaint.  Managers would usually groom the male employee they wanted for a position without making any effort to let women know of the opportunity. Newman was discouraged and deterred from from trying to compete for promotion and training opportunities under Wal-Mart's biased system.  She made known her interest in such promotion opportunities through the limited means that Wal-Mart made available.

238.   Based on her knowledge and experience from working at Wal-Mart, as set forth more fully above, Plaintiff Newman had personal knowledge of the qualifications necessary to perform and be promoted to the jobs she sought or was interested in filling, as well as personal knowledge of the fact that she possessed and satisfied such qualifications. *See* ¶73 above. She was nevertheless denied such promotions and they were given instead to male employees.

239.   *Stacy Nielsen:*  Ms. Nielsen began her employment in July 1999,  in Walmart Store #1346, located in Oceans Springs, Mississippi. Her initial pay rate was $6.00 per hour.  During her employment, she worked as an hourly Cashier, an hourly Sales Associate, an hourly Photo Technician and an hourly Lab Technician before resigning in December 2002 due to her discriminatory treatment. Nine years later she was rehired at Store #1346 in November 2011 as a Cashier. Her

employment ended in December 2011 when she completed her temporary assignment.

240.   Nielsen expressed her interest in being promoted to management positions to her Managers and Supervisors, and applied for various promotions that happened to come to her attention, including, without, limitation, Department Manager, Manager Trainee, Assistant Store Manager and entry to the Management Training Program.   Her manager, Lou (last name unknown), told her she was qualified for management positions and he said would put her into the Management Training program, but he never did. She was never interviewed for a promotion, even though she expressed her interest numerous times

241.   Plaintiff Nielsen has been denied promotions because of her gender and the disparate impact of Wal-Mart's promotion policies and practices set forth in paragraphs 39-72 above, each of which paragraphs are hereby specifically restated verbatim and incorporated by reference as part of Plaintiff Nielsen's facts and claims in this case.

242.   Plaintiff Nielsen was subject to, and adversely affected by, Wal-Mart's "word-of-mouth" promotion process that did not post or announce promotion opportunities or provide a formal application process as set forth above. She made known her interest in such promotion opportunities through the limited means that Wal-Mart made available.

243.   Based on her knowledge and experience from working at Wal-Mart, as set forth more fully above, Plaintiff Nielsen had personal knowledge of the qualifications necessary to perform and be promoted to the jobs she sought or was interested in filling, as well as personal knowledge of the fact that she possessed and satisfied such qualifications. *See* ¶73 above. She was nevertheless denied such promotions and they were given instead to male employees.

244.   During Nielsen's employment, men were paid more than her for performing the same or similar jobs and work.  Plaintiff Nielsen's store and employment were subject to the compensation and promotion policies and practices for Region 6 that are set forth in paragraphs 15-25, 36, 39-72 of this Complaint. Because of her gender, she was paid less than she should have been paid, and that similarly situated male employees have been paid, due to the disparate impact of Wal-Mart's compensation policies and practices set forth in paragraphs  15-25, 34-36, 53-61, 65-67 above, each of which paragraphs are hereby specifically restated verbatim and incorporated by reference as part of Plaintiff Nielson's  facts and claims in this case.

345.   *Alma Odom:*  Ms. Odom worked as an hourly Cashier Associate in Walmart Store #4333, located in Fairhope, Alabama  beginning in November 2008. She remained a cashier in various departments throughout her employment.  She left Wal-Mart in November 2009.

246.    During Odom's employment, she discovered that men were paid more than her for performing the same or similar jobs and work. For example, a young man who worked with her told Odom that he was paid $4.50 per hour more than her for the same Cashier job that she was assigned. They both had been hired at the same time, but she had many more years of prior management and retail experience, while he was straight out of high school with little or no experience of any kind.  He not only was paid more than her for the same Cashier job and duties, but was then groomed to become the next Customer Service Manager and promoted to that job in spite of Odom's greater experience as a manager and in retail operation in general. Odom also knew of similar incidents in which other women who were paid less than less experienced males who had only recently been hired with little or no comparable experience or qualifications.

247.   Plaintiff Odom's store and employment were subject to the compensation and promotion policies and practices for Region 6 that are set forth in paragraphs  15-25, 36, 39-72 of this Complaint. Because of her gender, she was paid less than she should have been paid, and that similarly situated male employees have been paid, due to the disparate impact of Wal-Mart's compensation policies and practices set forth in paragraphs 15-25, 34-36, 53-61, 65-67  above, each of which paragraphs are hereby specifically restated verbatim and incorporated by reference as part of Plaintiff Odom's  facts and claims in this case.

248.   Because Wal-Mart prohibited employees from discussing pay with each other, Odom was unable to discover all the specific instances of such pay disparities between her and her male peers.

249.   Odom expressed her interest in being promoted to management positions to her Managers and Supervisors, and she applied for such promotions whenever she was able to find out about such opportunities before they were filled, including, but not limited to, the Customer Service Manager given to the young man paid more than her as a Cashier despite her many years of previous management and retail experience.   She was interested in promotion to management positions and training, including, without limitation, Department Manager, Support Manager, Management Trainee, Assistant Store Manager and Store Manager or Co-Manager.

250.   Plaintiff Odom has been denied promotions because of her gender and the disparate impact of Wal-Mart's promotion policies and practices set forth in paragraphs 39-72 above, each of which paragraphs are hereby specifically restated verbatim and incorporated by reference as part of Plaintiff Odom's  facts and claims in this case.

251.   Plaintiff Odom was subject to the "word-of-mouth" promotion process that did not post or announce promotion opportunities or provide a formal application process which is set forth above in paragraphs 40, 44-45, 53-72 of this

Complaint. She made known her interest in such promotion opportunities through the limited means that Wal-Mart made available.

252.   Based on her knowledge and experience from working at Wal-Mart, as set forth more fully above, Plaintiff Odom had personal knowledge of the qualifications necessary to perform and be promoted to the jobs she sought or was interested in filling, as well as personal knowledge of the fact that she possessed and satisfied such qualifications. *See* ¶73 above. She was nevertheless denied such promotions and they were given instead to male employees.

253.   ***Dorthea Martin Pears:***   Ms. Pears worked at the Wal-Mart located on Highway 90 in Mobile, Alabama until late 1999. She worked as an overnight stocker in the toy department and eventually left Wal-Mart because she was injured on the job and had complications from her injury which made it difficult to continue working there.

254.   During Pears' employment, she discovered that men were paid more than her for performing the same or similar jobs and work. Plaintiff Pears' store and employment were subject to the compensation and promotion policies and practices for Region 6 that are set forth in paragraphs 15-25, 36, 39-72 of this Complaint. Because of her gender, she was paid less than she should have been paid, and that similarly situated male employees have been paid, due to the disparate impact of Wal-Mart's compensation policies and practices set forth in paragraphs 15-25, 34-

36, 53-61, 65-67 above, each of which paragraphs are hereby specifically restated verbatim and incorporated by reference as part of Plaintiff Pears' facts and claims in this case. Because Wal-Mart prohibited employees from discussing pay with each other, Pears was unable to discover all the specific instances of such pay disparities between her and her male peers. Her supervisor in the toy department also instructed her not to discuss anything regarding pay or promotions. Employees were subject to punishment if they were caught disclosing such information, thereby making it difficult, and often impossible for her and other women to know who was making more than them for the same or similar jobs or work.

255.   Ms. Pears expressed her interest in being promoted to management positions to her supervisor and Human Resources, and she applied for such promotions whenever she was able to find out about such opportunities before they were filled, such as when she requested promotion to Manager Trainee and the management training program. Her supervisor responded that women are better suited for sweeping and cleaning rather than jobs like those performed by men. Her supervisor also responded to her application for promotion to traditionally male managerial positions by telling her that women should keep to domestic work and that men should not be assigned domestic work in the store. Pears and other women, however, had to both domestic work in the store and the same non-domestic work as men, albeit for less pay. In addition to performing the same work as men for less

pay, women had to also and clean and straighten up while their male coworkers were taking breaks.

256.   Ms. Pears also told the human resources department that she wanted to be promoted to Manager Trainee and to participate in the management training program. Human Resources told her that it would let her know if something became available, but that never occurred despite the fact that she had previous experience in that field that qualified her for such job and management training program. Additionally, she applied for two higher paying jobs in the clothing and security departments that were given to men notwithstanding her prior experience that better qualified her for such jobs.

257.   Plaintiff Pears has been denied promotions because of her gender and the disparate impact of Wal-Mart's promotion policies and practices set forth in paragraphs 39-72 above, each of which paragraphs are hereby specifically restated verbatim and incorporated by reference as part of Plaintiff Pears' facts and claims in this case. Among other examples, Wal-Mart imposed a lifting or carrying requirement that had disparate impact on Pears and women generally.

258.   Plaintiff Pears was subject to the "word-of-mouth" promotion process that did not post or announce promotion opportunities or provide a formal application process which is set forth above in paragraphs 40, 44-45,49-50, 53-72 of

this Complaint. She made known her interest in such promotion opportunities through the limited means that Wal-Mart made available.

259.   Based on her knowledge and experience from working at Wal-Mart, as set forth more fully above, Plaintiff Pears had personal knowledge of the qualifications necessary to perform and be promoted to the jobs she sought or was interested in filling, as well as personal knowledge of the fact that she possessed and satisfied such qualifications. *See* ¶73 above. She was nevertheless denied such promotions and they were given instead to male employees.

260.   *Sherlia Phillips:* Ms. Phillips began her employment in September 1991, as a Courtesy Desk Associate in Walmart Store #1174, located in Thomasville, Alabama. Phillips eventually became a Customer Service Manager until she left Wal-Mart in 2003.

261.   During her employment at Wal-Mart, Phillips discovered that male associates were being paid more than her and female department heads. Plaintiff Phillips' store and employment were subject to the compensation and promotion policies and practices for Region 6 that are set forth in paragraphs 15-25, 36, 39-72 of this Complaint. Because of her gender, she was paid less than she should have been paid, and that similarly situated male employees have been paid, due to the disparate impact of Wal-Mart's compensation policies and practices set forth in paragraphs 15-25, 34-36, 53-61, 65-67 above, each of which paragraphs are hereby

specifically restated verbatim and incorporated by reference as part of Plaintiff Phillips' facts and claims in this case.  Male managers gave their male friends larger raises than women.  Because Wal-Mart prohibited employees from disclosing their pay to each other.

262.   Ms. Phillips expressed her interest in being promoted to management positions to her managers and supervisors, and applied for various promotions when she was able to learn about them before they were filled, including Manager Trainee, Assistant Manager and Asset Protection Supervisor. Whenever she was able to learn of an opening she would talk to her managers and supervisors about considering her.

263.   Plaintiff Phillips has been denied promotions because of her gender and the disparate impact of Wal-Mart's promotion policies and practices set forth in paragraphs 39-72 above, each of which paragraphs are hereby specifically restated verbatim and incorporated by reference as part of Plaintiff Phillips' facts and claims in this case.  Plaintiff Phillips was subject to the "word-of-mouth" promotion process that did not post or announce promotion opportunities or provide a formal application process which is set forth above in paragraphs 40, 44-45,49-50, 53-72 of this Complaint. Wal-Mart's practices discouraged  Phillips from applying for the Manager Training Program  and Assistant Store Manager.  She made known her interest in such promotion opportunities through the limited means that Wal-Mart made available.

264.  Based on her knowledge and experience from working at Wal-Mart, as set forth more fully above, Plaintiff Phillips had personal knowledge of the qualifications necessary to perform and be promoted to the jobs she sought or was interested in filling, as well as personal knowledge of the fact that she possessed and satisfied such qualifications. *See* ¶73 above. She was nevertheless denied such promotions and they were given instead to male employees.

265.  ***Lanika Saunders:***  Ms. Saunders began her employment in August 1998, as a Cashier in Walmart Store #1032, located in Lynn Haven, Florida. She also worked for Wal-Mart Store #1207 in Panama City, Florida. She resigned in January 2003.

266.  Ms. Saunders was very interested in being promoted to Customer Service Manager, Department Manager, Support Manager, Manager Trainee,  and other managerial opportunities.  She told her manager that she wanted to be promoted and submitted an application. Despite that effort, she was never interviewed and men continued to be favored for such traditional male management opportunities and positions. Ms. Saunders learned from her own observation and experience that men were disproportionately favored over women for traditionally male jobs and departments at Wal-Mart.

267.  Plaintiff  Saunders has been denied promotions because of her gender and the disparate impact of Wal-Mart's promotion policies and practices set forth in

paragraphs 39-72 above, each of which paragraphs are hereby specifically restated verbatim and incorporated by reference as part of Plaintiff Saunders' facts and claims in this case.

268.  Plaintiff Saunders was subject to the "word-of-mouth" promotion process that did not post or announce promotion opportunities or provide a formal application process which is set forth above in paragraphs 40, 44-45,49-50, 53-72 of this Complaint. She made known her interest in such promotion opportunities through the limited means that Wal-Mart made available.

269.  Based on her knowledge and experience from working at Wal-Mart, as set forth more fully above, Plaintiff Saunders had personal knowledge of the qualifications necessary to perform and be promoted to the jobs she sought or was interested in filling, as well as personal knowledge of the fact that she possessed and satisfied such qualifications. *See ¶*73 above. She was nevertheless denied such promotions and they were given instead to male employees.

270.  Saunders also discovered while working at Wa-Mart that men were paid more than her for performing the same or similar jobs and work.  Plaintiff Saunders' store and employment were subject to the compensation and promotion policies and practices for Region 6 that are set forth in paragraphs 15-25, 36, 39-72 of this Complaint. Because of her gender, she was paid less than she should have been paid, and that similarly situated male employees have been paid, due to the

disparate impact of Wal-Mart's compensation policies and practices set forth in paragraphs 15-25, 34-36, 53-61, 65-67 above, each of which paragraphs are hereby specifically restated verbatim and incorporated by reference as part of Plaintiff Saunders' facts and claims in this case.

271.   *Willie Mae Shelley:*  Ms. Shelley began her employment in April 1995, as a Sales Associate in the Garden Center at Walmart Store #1222, located in Pensacola, Florida. She left Wal-Mart in May 2004, but was rehired at Store #1222 on May 19, 2009 as a temporary Sales Associate on a one month assignment. Her performance evaluations were always good.

272.   Ms. Shelley discovered while working at Wal-Mart that men were paid more than her for performing the same or similar jobs or work. She learned that two male employees were paid more than her for performing the same work in the same department and store that she worked in—the Garden Center at Store #1222 in Pensacola, Florida. One of those male Garden Center associates was James King, and she cannot currently recall the name of the other male Garden Center associate who was paid more than her, but he had not been employed as long as she had.

273.   Plaintiff Shelley's store and employment were subject to the compensation and promotion policies and practices for Region 6 that are set forth in paragraphs 15-25, 36, 39-72 of this Complaint. Because of her gender, she was paid less than she should have been paid, and that similarly situated male employees have

been paid, due to the disparate impact of Wal-Mart's compensation policies and practices set forth in paragraphs 15-25, 34-36, 53-61, 65-67 above, each of which paragraphs are hereby specifically restated verbatim and incorporated by reference as part of Plaintiff Shelley's  facts and claims in this case.

274.   Ms. Shelley was also very interested in being promoted and requested that she be considered for promotion to her Manager, Dun (last name unknown). He refused to take her request seriously, telling her that she "didn't really want" to be promoted. That didn't change when applied for a better paying job in the stationary department. Her application was still ignored and the job was given to a male employee.

275.  Plaintiff Shelley has been denied promotions because of her gender and the disparate impact of Wal-Mart's promotion policies and practices set forth in paragraphs 39-72 above, each of which paragraphs are hereby specifically restated verbatim and incorporated by reference as part of Plaintiff Shelley's  facts and claims in this case.

276.   Plaintiff   Shelley was subject to the "word-of-mouth" promotion process that did not post or announce promotion opportunities or provide a formal application process which is set forth above in paragraphs  15-25, 34-36, 53-61, 65-67 of this Complaint.  She was interested in promotion to management positions and training, including, without limitation, Department Manager, Support Manager,

Management Trainee and Assistant Store Manager. She made known her interest in such promotion opportunities through the limited means that Wal-Mart made available. Promotion opportunities were often given to men before they were even known to exist or women could apply.

277. Based on her knowledge and experience from working at Wal-Mart, as set forth more fully above, Plaintiff Shelley had personal knowledge of the qualifications necessary to perform and be promoted to the jobs she sought or was interested in filling, as well as personal knowledge of the fact that she possessed and satisfied such qualifications. *See* ¶73 above. She was nevertheless denied such promotions and they were given instead to male employees.

278. *Katherine Sims:* Ms. Sims began her employment in May 1996, as a Cashier in Walmart Store #541, located in Covington, Louisiana. She resigned four years later on June 28, 2000.

279. During her employment, men were paid more than her for performing the same or similar jobs and work. For example, two male Cashiers, Tate (last name unknown) and Donald (last name unknown), disclosed that they both were paid more than her, and given larger pay raises than her, for the same job in the same store, and even though her performance evaluations were excellent and she had been awarded honors as Employee of the Month.

280.   Plaintiff Sims' store and employment were subject to the compensation and promotion policies and practices for Region 6 that are set forth in paragraphs 15-25, 36, 39-72 of this Complaint. Because of her gender, she was paid less than she should have been paid, and that similarly situated male employees have been paid, due to the disparate impact of Wal-Mart's compensation policies and practices set forth in paragraphs 15-25, 34-36, 53-61, 65-67 above, each of which paragraphs are hereby specifically restated verbatim and incorporated by reference as part of Plaintiff Sims' facts and claims in this case.

281.   Ms. Sims was also very interested in being promoted to better paying positions and departments traditionally assigned to male employees, including Department Manager, Manager Trainee and other managerial positions and opportunities. She expressed that interest to her Manager and others, including applying for Department Manager in the Clothing Department. Such job opportunities, however, were often not posted or announced so that Sims and other interested women could know about and compete before the opportunity was filled with a male employee again. Word-of-mouth was often the only means of learning about promotional opportunities before they were filled.

282.   Plaintiff  Sims has been denied promotions because of her gender and the disparate impact of Wal-Mart's promotion policies and practices set forth in paragraphs 39-72 above, each of which paragraphs are hereby specifically restated

verbatim and incorporated by reference as part of Plaintiff Sims' facts and claims in this case.

283.   Plaintiff Sims was subject to the "word-of-mouth" promotion process that did not post or announce promotion opportunities or provide a formal application process which is set forth above in paragraphs  40, 44-45,49-50, 53-72 of this Complaint.  She was interested in promotion to management positions and training, including, without limitation, Department Manager, Support Manager, Management Trainee and Assistant Store Manager.  She made known her interest in such promotion opportunities through the limited means that Wal-Mart made available.

284.   Consequently, Ms. Sims was discouraged and deterred from trying to compete for promotion and training opportunities under Wal-Mart's biased system, and it was difficult, and often impossible, for her and other female employees to identify the male employees with whom they competed head-to-head because of the lack of an above-board  posting and application process.

285.   Based on her knowledge and experience from working at Wal-Mart, as set forth more fully above, Plaintiff Sims had personal knowledge of the qualifications necessary to perform and be promoted to the jobs she sought or was interested in filling, as well as personal knowledge of the fact that she possessed and

satisfied such qualifications. *See* ¶73 above. She was nevertheless denied such promotions and they were given instead to male employees.

286.   *Lue Smedley:*   Ms. Smedley began her employment in June 5, 2002, as a Sales Associate in Walmart Store #1362, located in Destin, Florida.   She resigned from  Wal-Mart  in September 2003.

287.   Ms. Smedley was very interested in being promoted to better paying positions and departments, including jobs and departments traditionally assigned to male employees such as Department Manager, Support Manager and Manager Trainee. She expressed her interests to her Manager, Ernest (last name unknown), and others.  She also applied for a stocking job, a job in the Automotive Department and other traditionally male positions and departments.   Her Manager's only response was that the jobs she wanted were a "man's job".  She was not interviewed for any of the jobs she sought as a result. Her opportunity to compete for such traditionally male jobs was also impeded by Wal-Mart's policy of not posting or announcing many vacancies and job opportunities so that Ms. Smedley and other interested women could know about and compete for such opportunities before they were filled with male employees again.

288.  Plaintiff Smedley was subject to the "word-of-mouth" promotion process that did not post or announce promotion opportunities or provide a formal application process which is set forth above in paragraphs 40, 44-45,49-50, 53-72 of

this Complaint. She made known her interest in such promotion opportunities through the limited means that Wal-Mart made available.

289. Plaintiff Smedley has been denied promotions because of her gender and the disparate impact of Wal-Mart's promotion policies and practices set forth in paragraphs 39-72 above, each of which paragraphs are hereby specifically restated verbatim and incorporated by reference as part of Plaintiff Smedley's facts and claims in this case.

290. Based on her knowledge and experience from working at Wal-Mart, as set forth more fully above, Plaintiff Smedley had personal knowledge of the qualifications necessary to perform and be promoted to the jobs she sought or was interested in filling, as well as personal knowledge of the fact that she possessed and satisfied such qualifications. *See* ¶73 above. She was nevertheless denied such promotions and they were given instead to male employees.

291. During Ms. Smedley's employment, men were paid more than her for performing the same or similar jobs and work. Plaintiff Smedley's store and employment were subject to the compensation and promotion policies and practices for Region 6 that are set forth in paragraphs 15-25, 36, 39-72 of this Complaint. Because of her gender, she was paid less than she should have been paid, and that similarly situated male employees have been paid, due to the disparate impact of Wal-Mart's compensation policies and practices set forth in paragraphs 15-25, 34-

36, 53-61, 65-67 above, each of which paragraphs are hereby specifically restated verbatim and incorporated by reference as part of Plaintiff Smedley's facts and claims in this case.

292.   ***Bonnie Spadaro:***  Ms. Spadaro began her employment with Wal-Mart on September 3, 2003 as a Sales Associate. She also served as a Produce Sales Associate.

293.   Ms. Spadaro was very interested in being promoted to better paying positions and departments, including jobs and departments traditionally assigned to male employees. She expressed that interest to the appropriate managers and officials. Her opportunity to compete for such traditionally male jobs was impeded, however, by Wal-Mart's policy of not posting or announcing many vacancies and job opportunities so that Ms. Spadaro and other interested women could know about and compete for such opportunities before they were filled with male employees again.

294.   Plaintiff Spadaro has been denied promotions because of her gender and the disparate impact of Wal-Mart's promotion policies and practices set forth in paragraphs 39-72 above, each of which paragraphs are hereby specifically restated verbatim and incorporated by reference as part of Plaintiff Spadaro's facts and claims in this case.

295.   Plaintiff Spadaro was subject to the "word-of-mouth" promotion process that did not post or announce promotion opportunities or provide a formal application process which is set forth above in paragraphs 40, 44-45,49-50, 53-72 of this Complaint. She was interested in promotion to management positions and training, including, without limitation, Department Manager, Support Manager, Management Trainee and Assistant Store Manager.  Consequently, Ms. Smedley was discouraged and deterred from trying to compete for many promotion and training opportunities under Wal-Mart's biased system, and it was difficult, and often impossible, for her and other female employees to identify specific male employees with whom they competed head-to-head because of the lack of an above-board posting and application process. She made known her interest in such promotion opportunities through the limited means that Wal-Mart made available.

296.   Based on her knowledge and experience from working at Wal-Mart, as set forth more fully above, Plaintiff Spadaro had personal knowledge of the qualifications necessary to perform and be promoted to the jobs she sought or was interested in filling, as well as personal knowledge of the fact that she possessed and satisfied such qualifications. *See ¶*73 above. She was nevertheless denied such promotions and they were given instead to male employees.

297.   During Ms. Spadaro's employment, men were also paid more than her for performing the same or similar jobs and work. For example, male co-workers

disclosed that they were paid more than her, and given larger pay raises than her, for the same job in the same store and department. She reported and objected to management that men were being paid more and given better pay raises than her for the same or similar jobs or work. Nothing was done to redress or respond to such gender disparities in pay and training/ promotional opportunities.

298.   Plaintiff Spadaro's store and employment were subject to the compensation and promotion policies and practices for Region 6 that are set forth in paragraphs 15-25, 36, 39-72 of this Complaint. Because of her gender, she was paid less than she should have been paid, and that similarly situated male employees have been paid, due to the disparate impact of Wal-Mart's compensation policies and practices set forth in paragraphs  15-25, 34-36, 53-61, 65-67 above, each of which paragraphs are hereby specifically restated verbatim and incorporated by reference as part of Plaintiff Spadaro's  facts and claims in this case.

299.   *Penny Sullivan:* Ms. Sullivan originally worked for Walmart Store #1134, located in DeFuniak Springs, Florida in 1994-1996. She also worked for Wal-Mart Store # 1207 in Panama City, Florida.  She resigned from Wal-Mart on March 30, 2007 because of  discriminatory job opportunities and working conditions.

300.   Penny Sullivan expressed her interest in obtaining better-paying, traditionally male management positions to her managers and other appropriate

officials at Wal-Mart. She also applied for management positions to the extent permitted by Wal-Mart's limited application process, including, but not limited to, the Manager Trainee position and Management-in-Training Program.

301. Plaintiff Sullivan was subject to the "word-of-mouth" promotion process that did not post or announce promotion opportunities or provide a formal application process which is set forth above in paragraphs 40, 44-45,49-50, 53-72 of this Complaint. She was interested in promotion to management positions and training, including, without limitation, Department Manager, Support Manager, Management Trainee and Assistant Store Manager. She made known her interest in such promotion opportunities through the limited means that Wal-Mart made available.

302. Plaintiff Sullivan has been denied promotions because of her gender and the disparate impact of Wal-Mart's promotion policies and practices set forth in paragraphs 39-72 above, each of which paragraphs are hereby specifically restated verbatim and incorporated by reference as part of Plaintiff Sullivan's facts and claims in this case. Job vacancies were not regularly posted at Wal-Mart, and Ms. Sullivan usually only heard about openings through word of mouth. When she eventually was able to get the predominantly male managerial staff to respond to her requests for promotion, she was able to take and pass the test required for management positions.

303.   Penny Sullivan had experience in a wide variety of Wal-Mart jobs, including, without limitation, Cashier, Door Greeter, Sales Associate, Claims Office Associate, and later, Grocery Manager and Jewelry Manager. Despite her applications and qualifications, she was only able to obtain a management position in 2001 after years of effort and frustration during the prior seven years. She eventually became a Department Manager from May 6, 2001 to March, 23, 2003 and a Customer Service Manager from June 29, 2003 to June 27, 2004.

304.   In her experience and observation, promotions were very difficult for women to obtain, and she had to fight the predominantly male managerial staff for every promotion that she sought. For example, her Manager, George Haigh, responded to her requests for promotion by rudely telling her she should "find a husband" or "look for a new husband". He also tried to discourage her from pursuing promotion by saying that she would be required to move away to other parts of the country if she continued to seek management promotions. He also made it clear that for him, men were superior to women —that women may work hard and do a good job, but men must run things. He was always very condescending and verbally abusive to Sullivan and other women, including yelling at them in front of customers as if they were children and abusing them until some began to cry and fear losing their jobs because of his bias.

305.   Through no fault of her own, Ms. Sullivan resumed Cashier duties in June 2004 and continued to seek promotion to better paying, traditionally male managerial positions and training until she eventually resigned on March 30, 2007 out of frustration with the lack of equal job opportunities for women at Wal-Mart. She believed that it was futile to stay or to further attempt to move up to the traditionally male managerial jobs at Wal-Mart, and that she was being forced to resign for lack of any hope of advancement as a woman. During the prior three years (2004-2007) she had continued to seek promotion to the better-paying, traditionally male management positions in the same way as she had been doing for the prior ten years (1994-2004). She expressed her continuing interest in such promotion opportunities to her managers and other appropriate officials at Wal-Mart throughout her entire thirteen years at Wal-Mart (1994-2007), including, but not limited to, applying for Manager-in-Training positions and the Management-in-Training Program. She also requested a Customer Service Manager position that was given to a much younger and less experienced male cashier in February 2007 in spite of Ms. Sullivan's successful performance of that same job in 2003-2004.

306.   Based on her knowledge and experience from working at Wal-Mart, as set forth more fully above, Plaintiff Sullivan had personal knowledge of the qualifications necessary to perform and be promoted to the jobs she sought or was interested in filling, as well as personal knowledge of the fact that she possessed and

satisfied such qualifications. *See* ¶73 above. She was nevertheless denied such promotions and they were given instead to male employees.

307.   During her employment, men were also paid more than Sullivan for performing the same or similar jobs and work. Plaintiff Sullivan's store and employment were subject to the compensation and promotion policies and practices for Region 6 that are set forth in paragraphs  15-25, 36, 39-72 of this Complaint. Because of her gender, she was paid less than she should have been paid, and that similarly situated male employees have been paid, due to the disparate impact of Wal-Mart's compensation policies and practices set forth in paragraphs 15-25, 34-36, 53-61, 65-67  above, each of which paragraphs are hereby specifically restated verbatim and incorporated by reference as part of Plaintiff Sullivan's  facts and claims in this case.

308.   As with the other Plaintiffs, however, she was unable to discover all of the specific instances of such pay disparities between her and her male peers because Wal-Mart had a strict policy against employees discussing their pay or promotion opportunities and were subject to punishment if they were caught disclosing such information.

309.   *Felicia Toney:*  Ms. Toney began her employment in March, 1998, as a Lab Technician in Walmart Store #916, located in Hattiesburg, Mississippi.  In

February, 2002, she transferred as a Photo Technician to Store #912, located in New Orleans, Louisiana. She resigned from Wal-Mart in December 2002.

310.   Ms. Toney repeatedly told the appropriate managers and officials that was she was very interested in obtaining management positions and training, including her managers, Steve Bellino and Roy Flake. She also applied for the position of Manager Trainee and the Management Training Program. In her experience and observation, the predominantly male managers expressed bias against female candidates for traditionally male jobs by asking very male-centered questions that adversely affected women's consideration and discouraged further efforts at obtaining such jobs.

311.   Plaintiff  Toney has been denied promotions because of her gender and the disparate impact of Wal-Mart's promotion policies and practices set forth in paragraphs 29-72 above, each of which paragraphs are hereby specifically restated verbatim and incorporated by reference as part of Plaintiff Toney's  facts and claims in this case.

312.   Plaintiff Toney was subject to the "word-of-mouth" promotion process that did not post or announce promotion opportunities or provide a formal application process which is set forth above in paragraphs 40, 44-45,49-50, 53-72 of this Complaint. She was interested in promotion to management positions and training, including, without limitation, Department Manager, Support Manager,

Management Trainee and Assistant Store Manager.  She made known her interest in such promotion opportunities through the limited means that Wal-Mart made available.

313.   Based on her knowledge and experience from working at Wal-Mart, as set forth more fully above, Plaintiff Toney had personal knowledge of the qualifications necessary to perform and be promoted to the jobs she sought or was interested in filling, as well as personal knowledge of the fact that she possessed and satisfied such qualifications. *See* ¶73 above. She was nevertheless denied such promotions and they were given instead to male employees.

314.   During her employment, men were also paid more than Toney for performing the same or similar jobs and work. Plaintiff Toney's store and employment were subject to the compensation and promotion policies and practices for Region 6 that are set forth in paragraphs 15–25, 36, 39-72 of this Complaint. Because of her gender, she was paid less than she should have been paid, and that similarly situated male employees have been paid, due to the disparate impact of Wal-Mart's compensation policies and practices set forth in paragraphs 15-25, 34-36, 53-61, 65-67 above, each of which paragraphs are hereby specifically restated verbatim and incorporated by reference as part of Plaintiff Toney's  facts and claims in this case.

315.  ***Niki Tucker:***  Ms. Tucker began her employment on June 21, 1996 in Walmart Store #991, located in Mobile, Alabama. After several resignations and rehirings while she was in school, she became a full-time Cashier in 1997 at the same store and pay rate of $5.25 per hour. She subsequently served as an hourly Customer Service Manager from October 11, 1997 to May 27, 2000 before becoming an hourly Courtesy Desk Associate from June 4, 2000 to July 30, 2003. She resigned on the latter date due to her lack of wage and promotion opportunities and adverse working conditions at Wal-Mart.

316.  Ms. Tucker sought promotions to traditionally male management positions and training, including, without limitation, Assistant Store Manager, Manager Trainee, Department Manager, Support Manager and entry to the Management Training Program.  She was subject to the "word-of-mouth" promotion process that did not post or announce promotion opportunities or provide a formal application process which is set forth above. She made known her interest in such promotion opportunities through the limited means that Wal-Mart made available.

317.  Plaintiff Tucker has been denied promotions because of her gender and the disparate impact of Wal-Mart's promotion policies and practices set forth in paragraphs 39-72 above, each of which paragraphs are hereby specifically restated verbatim and incorporated by reference as part of Plaintiff Tucker's facts and claims in this case.

318.   Based on her knowledge and experience from working at Wal-Mart, as set forth more fully above, Plaintiff Tucker had personal knowledge of the qualifications necessary to perform and be promoted to the jobs she sought or was interested in filling, as well as personal knowledge of the fact that she possessed and satisfied such qualifications. *See* ¶73 above. She was nevertheless denied such promotions and they were given instead to male employees.

319.   During her employment, men were also paid more than Tucker for performing the same or similar jobs and work. Plaintiff Tucker's store and employment were subject to the compensation and promotion policies and practices for Region 6 that are set forth in paragraphs  15-25, 36, 39-72 of this Complaint. Because of her gender, she was paid less than she should have been paid, and that similarly situated male employees have been paid, due to the disparate impact of Wal-Mart's compensation policies and practices set forth in paragraphs 15-25, 34-36, 53-61, 65-67 above, each of which paragraphs are hereby specifically restated verbatim and incorporated by reference as part of Plaintiff Tucker's  facts and claims in this case.

320.   ***Tammy Tuggle:***  Ms. Tuggle worked for Wal-Mart from 1995 to 1998 and was rehired again in November 2003, as a Stock Associate in Walmart Store #853, located in Mobile, Alabama. She later moved to Store #5174 in Semmes, Alabama as an Overnight Stock Associate. She resigned in September 2006.

321.   During her employment, men were paid more than her for performing the same or similar jobs and work. For example, two male overnight stockers, Will and Bill (last names unknown), disclosed that they were being paid more a dollar or more per hour than her for the same overnight stocker job in the same store.

322.   Plaintiff Tuggle's store and employment were subject to the compensation and promotion policies and practices for Region 6 that are set forth in paragraphs  15-25, 36, 39-72 of this Complaint. Because of her gender, she was paid less than she should have been paid, and that similarly situated male employees have been paid, due to the disparate impact of Wal-Mart's compensation policies and practices set forth in paragraphs 15-25, 34-36, 53-61, 65-67  above, each of which paragraphs are hereby specifically restated verbatim and incorporated by reference as part of Plaintiff Tuggle's  facts and claims in this case.  Like the other Plaintiffs, however, Ms. Tuggle was unable to discover all of the instances of such pay disparities between her and her male peers because Wal-Mart had a strict policy against employees discussing their pay or promotion opportunities and they were subject to punishment if they were caught disclosing such information.

323.   Ms. Tuggle also sought better-paying, traditionally male management positions, including, but not limited to, applying for Department Manager of the Hunting Department. She was not interviewed for such position and the promotion was given to a male employee. She was also interested in and sought other

120

management positions such as Manager-in-Training and entry into the Management Training Program.

324.   Plaintiff Tuggle has been denied promotions because of her gender and the disparate impact of Wal-Mart's promotion policies and practices set forth in paragraphs 39-72 above, each of which paragraphs are hereby specifically restated verbatim and incorporated by reference as part of Plaintiff Tuggle's facts and claims in this case.

325.   Plaintiff Tuggle was subject to the "word-of-mouth" promotion process that did not post or announce promotion opportunities or provide a formal application process which is set forth above in paragraphs 40, 44-45,49-50, 53-72 of this Complaint. She made known her interest in such promotion opportunities through the limited means that Wal-Mart made available.

326.   Based on her knowledge and experience from working at Wal-Mart, as set forth more fully above, Plaintiff Tuggle had personal knowledge of the qualifications necessary to perform and be promoted to the jobs she sought or was interested in filling, as well as personal knowledge of the fact that she possessed and satisfied such qualifications. *See* ¶73 above. She was nevertheless denied such promotions and they were given instead to male employees.

327.   ***Connie Waldrop:***  Ms. Waldrop began her employment in August 9, 1996, as a Cashier in Walmart Store #483, located in Prattville, Alabama. She

eventually was promoted to Department Manager in 2006 and left Wal-Mart on May 29, 2012.

328.   Ms. Waldrop often expressed her interest in being promoted to management positions to her Manager and other officials. She applied for Manager Trainee, entry to the Management Training Program and for promotion or transfer to the Accounting and Information Systems Departments.  She was also interested in Department Manager, Support Manager and Assistant Store Manager positions.

329.   Plaintiff  Waldrop has been denied promotions because of her gender and the disparate impact of Wal-Mart's promotion policies and practices set forth in paragraphs 39-72 above, each of which paragraphs are hereby specifically restated verbatim and incorporated by reference as part of Plaintiff  Waldrop's  facts and claims in this case.  She was subject to the "word-of-mouth" promotion process that did not post or announce promotion opportunities or provide a formal application process which is set forth above in paragraphs 40, 44-45, 49-50, 53-72 of this Complaint. She made known her interest in such promotion opportunities through the limited means that Wal-Mart made available.

330.   Based on her knowledge and experience from working at Wal-Mart, as set forth more fully above, Plaintiff Waldrop had personal knowledge of the qualifications necessary to perform and be promoted to the jobs she sought or was interested in filling, as well as personal knowledge of the fact that she possessed and

satisfied such qualifications. *See* ¶73 above. She was nevertheless denied such promotions and they were given instead to male employees.

331.   *Annette Williams:*  Ms. Williams began her employment in September 1999, as a Cashier in Walmart Store #332, located in Madison, Alabama. She  also worked as a Sales Associate  before resigning from Wal-Mart in October 2000.

332.   Ms. Williams expressed her interest to her Manager in being promoted to the traditionally male positions of Assistant Manager, Manager Trainee, as well as entering the Management Training Program.   She was also interested in promotion to Assistant Manager.   Her opportunities, however, were subject to the "word-of-mouth" promotion process that did not post or announce promotion opportunities or provide a formal application process which as set forth above. She made known her interest in such promotion opportunities through the limited means that Wal-Mart made available.

333.   Plaintiff Williams has been denied promotions because of her gender and the disparate impact of Wal-Mart's promotion policies and practices set forth in paragraphs 39-72 above, each of which paragraphs are hereby specifically restated verbatim and incorporated by reference as part of Plaintiff Williams'  facts and claims in this case.

334.   Based on her knowledge and experience from working at Wal-Mart, as set forth more fully above, Plaintiff Williams had personal knowledge of the

qualifications necessary to perform and be promoted to the jobs she sought or was interested in filling, as well as personal knowledge of the fact that she possessed and satisfied such qualifications. *See* ¶73 above. She was nevertheless denied such promotions and they were given instead to male employees.

335.  Plaintiff Williams' store and employment were subject to the compensation and promotion policies and practices for Region 6 that are set forth in paragraphs 15-25, 36, 39-72 of this Complaint. Because of her gender, she was paid less than she should have been paid, and that similarly situated male employees have been paid, due to the disparate impact of Wal-Mart's compensation policies and practices set forth in paragraphs 15-25, 34-36, 53-61, 65-67 above, each of which paragraphs are hereby specifically restated verbatim and incorporated by reference as part of Plaintiff  Williams'  facts and claims in this case.

336.  *Elsie Williams:*  Ms. Williams began her employment in June 1996, as an Associate in Walmart Store #2132, located in Baton Rouge, Louisiana. She served as a Department Manager from July 31, 1999 to January 4, 2001, at which time she became an Inventory Clerk until she resigned from Wal-Mart in March 2002 to find better opportunities.

337.  During her employment she discovered that men were paid more than her for performing the same or similar jobs and work. For example, male co-workers

disclosed that the were being paid more and getting higher pay raises than her for the same or similar jobs and work.

338. Plaintiff Williams' store and employment were subject to the compensation and promotion policies and practices for Region 6 that are set forth in paragraphs 15-25, 36, 39-72 of this Complaint. Because of her gender, she was paid less than she should have been paid, and that similarly situated male employees have been paid, due to the disparate impact of Wal-Mart's compensation policies and practices set forth in paragraphs 15-25, 34-36, 53-61, 65-67 above, each of which paragraphs are hereby specifically restated verbatim and incorporated by reference as part of Plaintiff Williams' facts and claims in this case.

339. Elsie Williams was also very interested in being promoted to better paying positions and departments traditionally assigned to male employees, including Department Manager, Support Manager, Manager Trainee as part of the Management Training Program and other managerial positions and opportunities. She expressed her interest in being promoted to her Store Manager, Brian (last name unknown), and other officials. She also applied for Department Manager. Her opportunities, however, were subject to the "word-of-mouth" promotion process that did not post or announce promotion opportunities or provide a formal application process which is set forth above in paragraphs 40, 44-45, 49-50, 53-72 of this

Complaint. She made known her interest in such promotion opportunities through the limited means that Wal-Mart made available.

340.  Plaintiff Elsie Williams has been denied promotions because of her gender and the disparate impact of Wal-Mart's promotion policies and practices set forth in paragraphs 39-72 above, each of which paragraphs are hereby specifically restated verbatim and incorporated by reference as part of Plaintiff Williams' facts and claims in this case.

341.  Men were favored for traditionally male jobs and departments, while women had few opportunities other than in the lower paying, traditional "female" jobs and departments. Williams was discouraged from seeking promotions to traditional "male" jobs and departments like those in Electronics, Sports, etc. Male departments were the highest paid departments.  Consequently, Ms. Williams was discouraged and deterred from competing for promotion and training opportunities under Wal-Mart's biased system, and it was difficult, if not impossible, for her to identify specific male employees with whom they competed head-to-head because of the lack of an above-board posting and application process.

342.  Based on her knowledge and experience from working at Wal-Mart, as set forth more fully above, Elsie Williams had personal knowledge of the qualifications necessary to perform and be promoted to the jobs she sought or was interested in filling, as well as personal knowledge of the fact that she possessed and

satisfied such qualifications. *See* ¶73 above. She was nevertheless denied such promotions and they were given instead to male employees.

343.   ***Tracy Wright:***   Ms. Wright began her employment  April 2, 1999, as a Cashier in Walmart Store #919, located in Ft. Walton Beach, Florida. She also worked  as an Instock Associate and Inventory Associate, as well as in  the Tire & Lube Express and Cosmetics.    Ms. Wright transferred to Store #944, located in Crestview, Florida.  She left Wal-Mart in October 2011. Ms. Wright's performance evaluations were always exemplary.

344.    Ms. Wright discovered  that men were being paid more than her. Plaintiff Wright's store and employment were subject to the compensation and promotion policies and practices for Region 6 that are set forth in paragraphs  15-25, 36, 39-72 of this Complaint. Because of her gender, she was paid less than she should have been paid, and that similarly situated male employees have been paid, due to the disparate impact of Wal-Mart's compensation policies and practices set forth in paragraphs  15-25, 34-36, 53-61, 65-67 above, each of which paragraphs are hereby specifically restated verbatim and incorporated by reference as part of Plaintiff Wright's facts and claims in this case. Wal-Mart prohibits its employees from disclosing their pay with each other.

345.   Tracy Wright was very interested in receiving promotions, expressed her interest in many openings and repeatedly applied for various promotions,

127

including  the Customer Service Manager.  A male employee named Michael (last name unknown) was hired for that position instead.  Her promotion opportunities, however, were subject to the "word-of-mouth" promotion process that did not post or announce promotion opportunities or provide a formal application process which as set forth above. She was interested in promotion to management positions and training, including, without limitation, Department Manager, Support Manager, Management Trainee and Assistant Store Manager.  She made known her interest in such promotion opportunities through the limited means that Wal-Mart made available.  Managers would pre-select the employee they wanted  for hire or promotion.

346.   Plaintiff  Wright has been denied promotions because of her gender and the disparate impact of Wal-Mart's promotion policies and practices set forth in paragraphs 39-72 above, each of which paragraphs are hereby specifically restated verbatim and incorporated by reference as part of Plaintiff Wright's  facts and claims in this case.

347.   Based on her knowledge and experience from working at Wal-Mart, as set forth more fully above, Plaintiff Wright had personal knowledge of the qualifications necessary to perform and be promoted to the jobs she sought or was interested in filling, as well as personal knowledge of the fact that she possessed and

satisfied such qualifications. *See* ¶73 above. She was nevertheless denied such promotions and they were given instead to male employees.

348.   ***Pamela Young:***  Ms. Young began her employment in April 2000, as a Sales Associate in Walmart Store #866, located in Mobile, Alabama.  She left Wal-Mart in March 2001.

349.   During her employment, Ms. Young discovered that men were paid more than her for the same or similar job or work. Plaintiff Young's store and employment were subject to the compensation and promotion policies and practices for Region 6 that are set forth in paragraphs 15-25, 36, 39-72 of this Complaint. Because of her gender, she was paid less than she should have been paid, and that similarly situated male employees have been paid, due to the disparate impact of Wal-Mart's compensation policies and practices set forth in paragraphs 15-25, 34-36, 53-61, 65-67 above, each of which paragraphs are hereby specifically restated verbatim and incorporated by reference as part of Plaintiff Young's facts and claims in this case.

350.   She also applied or otherwise sought management positions and training. Pamela Young was denied such promotions because of her gender and the disparate impact of Wal-Mart's promotion policies and practices set forth in paragraphs 39-72 above, each of which paragraphs are hereby specifically restated

verbatim and incorporated by reference as part of Plaintiff Young's facts and claims in this case.

351.    Pamela Young's promotion opportunities were subject to Wal-Mart's "word-of-mouth" promotion process that did not post or announce promotion opportunities or provide a formal application process as set forth above in paragraphs 40, 44-45,49-50, 53-72 of this Complaint. She was interested in promotion to management positions and training, including, without limitation, Department Manager, Support Manager, Management Trainee and Assistant Store Manager. She made known her interest in such promotion opportunities through the limited means that Wal-Mart made available.

352.    Based on her knowledge and experience from working at Wal-Mart, as set forth more fully above, Pamela Young had personal knowledge of the qualifications necessary to perform and be promoted to the jobs she sought or was interested in filling, as well as personal knowledge of the fact that she possessed and satisfied such qualifications. *See* ¶73 above. She was nevertheless denied such promotions and they were given instead to male employees.

353.    ***Deana Cotton:***    Ms. Cotton worked in Wal-Mart store #904 in Foley, Alabama from 1998-2002, and store #2748 in Gulf Shores, Alabama from 2009-2010.

130

354.     Male employees disclosed to her that they had been hired to perform the same job as her at a rate of around $13 - $14 per hour. Cotton was making $5 to $6 per hour less than these men who had no more experience or qualifications than she did. During her second stint with Wal-Mart, men were being hired to perform the same job as her at a rate of $12 to $15 per hour compared to her $9 per hour for the same work.  Cotton was unable, however, to discover all the instances of pay disparities between her and her male peers because Wal-Mart had a strict policy against employees disclosing or discussing their pay or promotion opportunities.

355.  Plaintiff Cotton's store and employment were subject to the compensation and promotion policies and practices for Region 6 that are set forth in paragraphs 15–25, 36, 39-72 of this Complaint. Because of her gender, she was paid less than she should have been paid, and that similarly situated male employees have been paid, due to the disparate impact of Wal-Mart's compensation policies and practices set forth in paragraphs 15-25, 34-36, 53-61, 65-67 above, each of which paragraphs are hereby specifically restated verbatim and incorporated by reference as part of Plaintiff Cotton's  facts and claims in this case.

356.     Plaintiff Cotton has been denied promotions because of her gender and the disparate impact of Wal-Mart's promotion policies and practices set forth in paragraphs 39-72 above, each of which paragraphs are hereby specifically restated

verbatim and incorporated by reference as part of Plaintiff Cotton's facts and claims in this case.

357.   ***Barbara Dawson:***   Ms. Dawson began her employment with Wal-Mart in October 1998 at Walmart Store #930, located in Montgomery, Alabama. She resigned in June 2002 after she had a slip and fall accident at the store.

358.   Plaintiff Dawson has been denied promotions because of her gender and the disparate impact of Wal-Mart's promotion policies and practices set forth in paragraphs 39-72 above, each of which paragraphs are hereby specifically restated verbatim and incorporated by reference as part of Plaintiff Dawson's facts and claims in this case.

359.   During her tenure at Wal-Mart, Dawson expressed interest in better paying positions traditionally and disproportionately filled by men, such as becoming an overnight stocker which Dawson requested. The starting pay rate for the overnight stocker position was around $10 per hour, which would have given her a substantial raise above the $6.76 per hour that was the most she was ever paid at Wal-Mart. The job she sought was given to a male employee named Winfield who had less years of service and experience than Dawson. She also asked about other higher paying positions on numerous occasions but was always brushed off by management in favor of male employees. Her request for an open position in the photo lab never received a reply. She spoke to her supervisor and to Human

Resources about less experienced and less qualified men getting jobs over her, but she received no response.

360.  Plaintiff Dawson was subject to the "word-of-mouth" promotion process that did not post or announce promotion opportunities or provide a formal application process as set forth above in paragraphs 40, 44-45, 49-50, 53-72  of this Complaint.  She was interested in promotion to management positions and training, including, without limitation, Department Manager, Support Manager, Management Trainee and Assistant Store Manager. She made known her interest in such promotion opportunities through the limited means that Wal-Mart made available.

361.   Based on her knowledge and experience from working at Wal-Mart, as set forth more fully above, Plaintiff Dawson had personal knowledge of the qualifications necessary to perform and be promoted to the jobs she sought or was interested in filling, as well as personal knowledge of the fact that she possessed and satisfied such qualifications. *See* ¶73 above. She was nevertheless denied such promotions and they were given instead to male employees.

362.  Plaintiff Dawson's store and employment were subject to the compensation and promotion policies and practices for Region 6 that are set forth in paragraphs  15-25, 36, 39-72 of this Complaint. Because of her gender, she was paid less than she should have been paid, and that similarly situated male employees have been paid, due to the disparate impact of Wal-Mart's compensation policies and

133

practices set forth in paragraphs 15-25, 34-36, 53-61, 65-67  above, each of which paragraphs are hereby specifically restated verbatim and incorporated by reference as part of Plaintiff Dawson's  facts and claims in this case.  Dawson was restricted to the lower paying position of Door Greeter that was traditionally and disproportionately paid less than similar positions assigned to men. Dawson was unable, however, to discover all the instances of pay disparities between her and her male peers because Wal-Mart's Human Resources Department and Personnel Department had a strict policy against employees discussing their pay or promotion opportunities. Employees were prohibited from talking about their pay or promotion opportunities and were subject to punishment if they were caught disclosing such information.

363.   ***Patricia Deese:*** Ms. Deese began her employment in August 1999 at Walmart Store #2760, located in Jackson, Alabama as an hourly Associate and transferred to Walmart Store # 853 located in Mobile, Alabama in January 2001  as a Sales Associate and Cashier. Ms. Deese resigned in April 2002.

364.   Plaintiff Deese's store and employment were subject to the compensation and promotion policies and practices for Region 6 that are set forth in paragraphs  15-25, 36, 39-72 of this Complaint. Because of her gender, she was paid less than she should have been paid, and that similarly situated male employees have been paid, due to the disparate impact of Wal-Mart's compensation policies and

practices set forth in paragraphs 15-25, 34-36, 53-61, 65-67 above, each of which paragraphs are hereby specifically restated verbatim and incorporated by reference as part of Plaintiff Deese's facts and claims in this case.

365. During her tenure at store #2760, Deese applied for many vacant department manager positions and was eventually promoted to department manager of the electronics department. However, she received only a $0.50 per hour raise to $7 per hour as the department manager of the highest grossing department in the store. She later learned that male non-management hourly employees in her department were paid more than she had been paid as Department Manager of that department. She had previously owned her own business and managed employees, yet was paid less than other less qualified males for non-management work. A young male associate, Jeremy (last name unknown), worked in the electronics department at a higher rate of pay than Deese had been paid as the Manager of that Department. Other males were also making more than her in the electronics department notwithstanding that she had more experience and responsibilities.

366. Deese complained about such pay disparities to her superiors. She went to the Store Manager to discuss the $7 per hour she was being paid as Department Manager and was falsely told that $7.00 per hour was standard pay for a Department Manager. Deese did not believe him, and asked him why is that with so much responsibility involved? He had no answer and shrugged it off. She checked with

other knowledgeable store personnel, and they assured her that the  male predecessor in her job was paid more than  $7.00 per hour.

367.   Deese was unable, however, to discover all the instances of pay disparities between her and her male peers because Wal-Mart's Human Resources Department and Personnel Department had a strict policy against employees discussing their pay or promotion opportunities.

368.   Plaintiff Deese has been denied promotions because of her gender and the disparate impact of Wal-Mart's promotion policies and practices set forth in paragraphs 39-72 above, each of which paragraphs are hereby specifically restated verbatim and incorporated by reference as part of Plaintiff Deese's  facts and claims in this case.

369.    During her tenure at Wal-Mart, Deese expressed interest in being promoted to management positions to her managers and supervisors, applying for at least six department manager positions before belatedly being promoted to department manager of the electronics department around 2000.  She was interested in promotion to management positions and training, including, without limitation, Manager Trainee and Assistant Store Manager.  She had previous management experience and owned and managed her own business, but was still denied numerous promotions to department manager position in favor of less experienced and less qualified men who were promoted over her.

370.   Plaintiff Deese was subject to the "word-of-mouth" promotion process that did not post or announce promotion opportunities or provide a formal application process as set forth above in paragraphs 40, 44-45,49-50, 53-72 of this Complaint. She made known her interest in such promotion opportunities through the limited means that Wal-Mart made available, but was denied the positions that she sought, was qualified to fill, and that were given instead to male employees.

371.   Based on her knowledge and experience from working at Wal-Mart, as set forth more fully above, Plaintiff Deese had personal knowledge of the qualifications necessary to perform and be promoted to the jobs she sought or was interested in filling, as well as personal knowledge of the fact that she possessed and satisfied such qualifications. *See* ¶73 above. She was nevertheless denied such promotions and they were given instead to male employees.

372.   ***Debra Gilbert:***  Ms. Gilbert began her employment in March 1993, as a Stocker in Walmart Store #734, located in Enterprise, Alabama.  She also worked as a Sales Associate in Sore #734 and Store #1284, located in Phenix City, Alabama. She left Wal-Mart in February 2000 on maternity leave and did not return because of how she was treated by management while employed and while pregnant. Among other events, while working pregnant a male member of management, Dallas (last name unknown), told her that she had no reason to be out on leave before she delivered her child because "pregnancy was normal and not a disease."

137

373.   Plaintiff Gilbert's store and employment were subject to the compensation and promotion policies and practices for Region 6 that are set forth in paragraphs 15-25, 36, 39-72 of this Complaint. Because of her gender, she was paid less than she should have been paid, and that similarly situated male employees have been paid, due to the disparate impact of Wal-Mart's compensation policies and practices set forth in paragraphs 15-25, 34-36, 53-61, 65-67 above, each of which paragraphs are hereby specifically restated verbatim and incorporated by reference as part of Plaintiff Gilbert's  facts and claims in this case.

374.   She was paid less as a stocker at store # 734 than men in the same position who were paid a dollar or more than her and who were hired after her with less experience and years of service than she did. For example, Gilbert had two male friends who were hired as stockers and who told her their starting rate of pay was a dollar or more than hers.  Don Yadon and Micah (last name unknown) were both hired with starting pay that was a dollar or more than her for the same or similar job and work. Even by the end of her employment with Wal-Mart in February 2000, she was making only $7.85 per hour even though she had been employed with Wal-Mart for almost seven years.

375.   Gilbert took her complaint about such gender disparities in pay to Wal-Mart's management, but the only response she received was that "men were the main breadwinners of the family and should be paid more." She was unable, however, to

discover all the instances of pay disparities between her and her male peers because Wal-Mart's Human Resources Department and Personnel Department had a strict policy against employees discussing their pay or promotion opportunities. Employees were prohibited from talking about their pay or promotion opportunities and were subject to punishment if they were caught disclosing such information. Gilbert filed a sworn EEOC Charge alleging that she was subjected to gender discrimination in wages, promotions and training.

376.   Gilbert also expressed her interest in being promoted to management positions and training to the appropriate management officials.  She was interested in promotion to management positions and training, including, without limitation, Department Manager, Support Manager, Management Trainee and Assistant Store Manager.  She expressed her interest in such promotion opportunities to Store Managers Ray Coots at store #734 and Wiley Brown at store #1284. The positions she sought, however, were given to men in each instance. Based on her own experience and what she observed throughout her employment at Wal-Mart, assignments and promotions to traditionally male management positions continued to be  predominantly and disproportionately given to men with few exceptions.

377.   Plaintiff  Gilbert has been denied promotions because of her gender and the disparate impact of Wal-Mart's promotion policies and practices set forth in paragraphs  39-72 above, each of which paragraphs are hereby specifically restated

verbatim and incorporated by reference as part of Plaintiff Gilbert's facts and claims in this case.

378. Plaintiff Gilbert was subject to the "word-of-mouth" promotion process that did not post or announce promotion opportunities or provide a formal application process which as set forth above in paragraphs 40, 44-45,49-50, 53-72of this Complaint. She made known her interest in such promotion opportunities through the limited means that Wal-Mart made available.

379. Based on her knowledge and experience from working at Wal-Mart, as set forth more fully above, Plaintiff Gilbert had personal knowledge of the qualifications necessary to perform and be promoted to the jobs she sought or was interested in filling, as well as personal knowledge of the fact that she possessed and satisfied such qualifications. *See* ¶73 above. She was nevertheless denied such promotions and they were given instead to male employees.

380. ***Tristen Harris:*** Ms. Harris began her employment in May 2005, as a Cashier in Walmart Store #2739, located in Bay Minette, Alabama. In early June 2005, she moved Sales Associate position. She later resigned from Wal-Mart once she was told she would not receive a pay raise that had been promised once she completed certain tests. She did not receive the promised raise after successfully completing such tests. She complained to her supervisor Jeremiah (last name

unknown), but nothing was done. He stated that he would "check into it" but nothing ever happenned and she never received a raise.

381. Male employees, however, were paid more than her for the same or similar job and work. Harris discovered she was subject to discriminatory wage practices because throughout her employment she spoke with men who confirmed that they were being paid substantially more than her for the same or similar work. For example, Harris discovered that a male employee, Eon (last name unknown), was paid a dollar or more per hour than her even though he had only been recently hired and had less experience than her. Among other information, the male employee showed his pay stub to Harris. Chason Hundley was another male employee who Harris discovered was paid more than her for the same or similar job and work. Harris resigned from Wal-Mart because of such gender disparities in pay and the resulting inadequacy of her compensation for the work she was performing for Wal-Mart.

382. Plaintiff Harris' store and employment were subject to the compensation and promotion policies and practices for Region 6 that are set forth in paragraphs 15–25, 36, 39-72 of this Complaint. Because of her gender, she was paid less than she should have been paid, and that similarly situated male employees have been paid, due to the disparate impact of Wal-Mart's compensation policies and practices set forth in paragraphs 15-25, 34-36, 53-61, 65-67 above, each of which

141

paragraphs are hereby specifically restated verbatim and incorporated by reference as part of Plaintiff Harris' facts and claims in this case.

383.   Plaintiff Harris also has been denied promotions because of her gender and the disparate impact of Wal-Mart's promotion policies and practices set forth in paragraphs 39-72 above, each of which paragraphs are hereby specifically restated verbatim and incorporated by reference as part of Plaintiff Harris' facts and claims in this case.  She was interested in promotion to management positions and training, including, without limitation, Department Manager, Support Manager, Management Trainee and Assistant Store Manager.

384.   ***Petrina Howard:***  Ms. Howard began her employment in May 1999, as a Cashier in Walmart Store #1168, located in Columbia, Mississippi. She resigned from Wal-Mart in August 2001.

385.   Plaintiff Howard's store and employment were subject to the compensation and promotion policies and practices for Region 6 that are set forth in paragraphs 15-25, 36, 39-72 of this Complaint. Because of her gender, she was paid less than she should have been paid, and that similarly situated male employees have been paid, due to the disparate impact of Wal-Mart's compensation policies and practices set forth in paragraphs 15-25, 34-36, 53-61, 65-67  above, each of which paragraphs are hereby specifically restated verbatim and incorporated by reference as part of Plaintiff Howard's  facts and claims in this case.

142

386.    Plaintiff Howard has been denied promotions because of her gender and the disparate impact of Wal-Mart's promotion policies and practices set forth in paragraphs 39-72 above, each of which paragraphs are hereby specifically restated verbatim and incorporated by reference as part of Plaintiff Howard's facts and claims in this case.

387.    Plaintiff Howard was subject to the "word-of-mouth" promotion process that did not post or announce promotion opportunities or provide a formal application process  as set forth above in paragraphs 40, 44-45,49-50, 53-72 of this Complaint. She made known her interest in such promotion opportunities through the limited means that Wal-Mart made available. She was interested in promotion to management positions and training, including, without limitation, Department Manager, Support Manager, Management Trainee  and  Assistant Store Manager.

388.    Based on her knowledge and experience from working at Wal-Mart, as set forth more fully above, Plaintiff Howard had personal knowledge of the qualifications necessary to perform and be promoted to the jobs she sought or was interested in filling, as well as personal knowledge of the fact that she possessed and satisfied such qualifications. *See* ¶73 above. She was nevertheless denied such promotions and they were given instead to male employees.

143

389.   *Patricia Johnson:* Ms. Johnson began her employment in June 2001 at Wal-Mart Store #54, located in Springdale, Arkansas, as an Overnight Stocker.  She resigned in August 2003.

390.   Patricia Johnson's store and employment were subject to the compensation and promotion policies and practices for Region 6 that are set forth in paragraphs  15-25, 36, 39-72 of this Complaint. Because of her gender, she was paid less than she should have been paid, and that similarly situated male employees have been paid, due to the disparate impact of Wal-Mart's compensation policies and practices set forth in paragraphs 15-25, 34-36, 53-61, 65-67  above, each of which paragraphs are hereby specifically restated verbatim and incorporated by reference as part of Patricia Johnson's  facts and claims in this case.

391.   Patricia Johnson also has been denied promotions because of her gender and the disparate impact of Wal-Mart's promotion policies and practices set forth in paragraphs 39-72 above, each of which paragraphs are hereby specifically restated verbatim and incorporated by reference as part of Plaintiff Johnson's  facts and claims in this case.

392.  Patricia Johnson was subject to the "word-of-mouth" promotion process that did not post or announce promotion opportunities or provide a formal application process as set forth above in paragraphs 40, 44-45,49-50, 53-72 of this Complaint.  She was interested in promotion to management positions and training,

including, without limitation, Department Manager, Support Manager, Management Trainee and Assistant Store Manager.   She made known her interest in such promotion opportunities through the limited means that Wal-Mart made available.

393.   Based on her knowledge and experience from working at Wal-Mart, as set forth more fully above, Patricia Johnson had personal knowledge of the qualifications necessary to perform and be promoted to the jobs she sought or was interested in filling, as well as personal knowledge of the fact that she possessed and satisfied such qualifications. *See* ¶73 above. She was nevertheless denied such promotions and they were given instead to male employees.

394.   ***Mary Bussa Landry:***   Ms. Landry worked for Wal-Mart until December 31, 1999 in  Store #2533, located in Gulf Breeze, Florida.  Plaintiff Landry's store and employment were subject to the compensation and promotion policies and practices for Region 6 set forth in this Complaint.

395.   Because of her gender, she was paid less than she should have been paid, and that similarly situated male employees have been paid, due to the disparate impact of Wal-Mart's compensation policies and practices set forth in paragraphs 15-25, 34-36, 53-61, 65-67 above, each of which paragraphs are hereby specifically restated verbatim and incorporated by reference as part of Plaintiff Landry's  facts and claims in this case.

396.    Plaintiff Landry was subject to the "word-of-mouth" promotion process that did not post or announce promotion opportunities or provide a formal application process  as set forth above in paragraphs  40, 44-45,49-50, 53-72 of this Complaint. She made known her interest in such promotion opportunities through the limited means that Wal-Mart made available. Based on her knowledge, experience, training and expertise from her employment in Region 6,  she was fully qualified for assignment or promotion to the jobs and opportunities that she applied for or was interested in filling.

397.    Plaintiff Landry was denied the positions that she sought, was qualified to fill,  and that were given instead to male employees.  Plaintiff Landry has been denied promotions because of her gender and the disparate impact of Wal-Mart's promotion policies and practices set forth in paragraphs 39-72 above, each of which paragraphs are hereby specifically restated verbatim and incorporated by reference as part of Plaintiff Landry's  facts and claims in this case. Men were given the higher paying jobs, while women were shunted to the lower paying cashier position.  Men were given the higher paying jobs in more desirable departments, while women were shunted to the lower paying cashier position. In addition,  promotions Landry  was interested in filling required applicants to be able to lift and move certain amounts of weight for Wal-Mart.   This policy had disparate impact on women, including Landry.

146

398.   **Joann Magee:** Ms. Magee began her employment in January 2007, as an Overnight Stocker in Walmart Store #1168, located in Columbia, Mississippi. She resigned in December 2008.

399.   Plaintiff Magee's store and employment were subject to the compensation and promotion policies and practices for Region 6 that are set forth in paragraphs 15–25, 36, 39-72 of this Complaint. Because of her gender, she was paid less than she should have been paid, and that similarly situated male employees have been paid, due to the disparate impact of Wal-Mart's compensation policies and practices set forth in paragraphs  15-25, 34-36, 53-61, 65-67 above, each of which paragraphs are hereby specifically restated verbatim and incorporated by reference as part of Plaintiff Magee's  facts and claims in this case.  Magee performed the same work as male employees who were paid more than her. Men at her store also were given pay raises much quicker than her and  women performing the same work.

400.   Plaintiff Magee also has been denied promotions because of her gender and the disparate impact of Wal-Mart's promotion policies and practices set forth in paragraphs 39-72 above, each of which paragraphs are hereby specifically restated verbatim and incorporated by reference as part of Plaintiff  Magee's  facts and claims in this case.  She was interested in promotion to management positions and training, including, without limitation, Department Manager, Support Manager, Management Trainee and Assistant Store Manager.

401.   *Debra Potts Shealey:*   Ms. Shealey  began work at Wal-Mart on April, 7, 1994 at store #1057 in Tallassee, Alabama as a Cashier.

402.   Ms. Shealey discovered while working at Wal-Mart that men were paid more than her for performing the same or similar jobs and work. A male co-worker told her that he was being paid $0.50 more per hour than her for the same work even though he had been with Wal-Mart a year less than her. By the time she left Wal-Mart, she was still being paid just $0.25 - $0.50 more than minimum wage.

403.   Plaintiff Shealey's store and employment were subject to the compensation and promotion policies and practices for Region 6 that are set forth in paragraphs 15–25, 36, 39-72   of this Complaint. Because of her gender, she was paid less than she should have been paid, and that similarly situated male employees have been paid, due to the disparate impact of Wal-Mart's compensation policies and practices set forth in paragraphs 15-25, 34-36, 53-61, 65-67 above, each of which paragraphs are hereby specifically restated verbatim and incorporated by reference as part of Plaintiff Shealey's  facts and claims in this case.

404.   Ms. Shealey also expressed her interest in being promoted to management positions to her Managers and Supervisors, and she applied various promotions when given the opportunity to do so. Promotion opportunities were often given to men before they were even known to exist or women could apply. Plaintiff Shealey was subject to the "word-of-mouth" promotion process that did not post or

148

announce promotion opportunities or provide a formal application process as set forth in paragraphs 40, 44-45,49-50, 53-72 above this Complaint. She made known her interest in such promotion opportunities through the limited means that Wal-Mart made available. She was interested in promotion to management positions and training, including, without limitation, Department Manager, Support Manager, Management Trainee and Assistant Store Manager.

405.   Plaintiff Shealey has been denied promotions because of her gender and the disparate impact of Wal-Mart's promotion policies and practices set forth in paragraphs 39-72 above, each of which paragraphs are hereby specifically restated verbatim and incorporated by reference as part of Plaintiff Shealey's  facts and claims in this case.

406.   Based on her knowledge and experience from working at Wal-Mart, as set forth more fully above, Plaintiff Shealey had personal knowledge of the qualifications necessary to perform and be promoted to the jobs she sought or was interested in filling, as well as personal knowledge of the fact that she possessed and satisfied such qualifications. *See* ¶73 above. She was nevertheless denied such promotions and they were given instead to male employees.

407.   ***Natalie Thomas:***  Ms. Thomas began her employment in July 2001 as a Cashier in Wal-Mart Store #934 in Daphne/Lake Forest, Alabama.

408.   Plaintiff Thomas's store and employment were subject to the compensation and promotion policies and practices for Region 6 that are set forth in paragraphs  15-25, 36, 39-72 of this Complaint. Because of her gender, she was paid less than she should have been paid, and  less than similarly situated male employees have been paid, due to the disparate impact of Wal-Mart's compensation policies and practices set forth in paragraphs 15-25, 34-36, 53-61, 65-67 above, each of which paragraphs are hereby specifically restated verbatim and incorporated by reference as part of Plaintiff Thomas's  facts and claims in this case.

409.   Plaintiff Thomas has also been denied promotions because of her gender and the disparate impact of Wal-Mart's promotion policies and practices set forth in paragraphs 39-72 above, each of which paragraphs are hereby specifically restated verbatim and incorporated by reference as part of Plaintiff Thomas's facts and claims in this case. The store in which she worked applied the same promotion policies and practices as all the other stores in Region 6 which are set forth in  such paragraphs.   She was interested in promotion to management positions and training, including, without limitation, Manager Trainee, Department Manager, Support Manager and Assistant Store Manager.

500.   Based on her knowledge and experience from working at Wal-Mart, as set forth more fully above, Plaintiff Thomas had personal knowledge of the qualifications necessary to perform and be promoted to the jobs she sought or was

interested in filling, as well as personal knowledge of the fact that she possessed and satisfied such qualifications. *See* ¶73 above. She was nevertheless denied such promotions and they were given instead to male employees.

## CAUSES OF ACTION

### Count I – Violation of Title VII (Disparate Treatment)

501. All prior paragraphs are incorporated as though fully set forth herein.

502. The foregoing conduct violated Title VII of the Civil Rights Act of 1964.

503. Wal-Mart violated Title VII by paying Plaintiffs less than similarly-qualified or less-qualified male employees and/or by promoting them less quickly and less frequently than similarly-qualified or less-qualified male employees.

504. Wal-Mart's discriminatory practices described above have denied each of the Plaintiffs promotional opportunities and compensation to which they are entitled, which has resulted in the loss of past and future wages and other job benefits.

505. As set forth in the statement of facts set forth above, Wal-Mart has paid each Plaintiff less than male employees who performed duties and responsibilities that required similar or less skill, responsibility and effort under similar working conditions.

### Count II – Violation of Title VII (disparate impact discrimination)

506.   All prior paragraphs are incorporated as though fully set forth herein.

507.   Wal-Mart has adopted and maintained a system for making decisions about compensation and promotions set forth above that has had an adverse and disparate impact on the Plaintiffs and female employees in Wal-Mart's Region 6. Its compensation policies and practices in setting and adjusting pay have had an adverse and disparate impact on female employees, including the Plaintiffs,   both collectively and individually.

508.   The Plaintiffs have been directly affected by such discriminatory policies, practices and procedures by being paid less than male employees for the same or similar jobs or work and/or duties requiring equal or less skill, responsibility and effort under similar working conditions.

509.   Wal-Mart's management track promotion policies and practices set forth above have also individually and collectively caused an adverse and disparate impact on female employees in promotions, including the Plaintiffs.

510.   Wal-Mart's discriminatory practices described above have denied Plaintiffs and other female employees in Region 6  promotional opportunities and compensation to which they are entitled and which has resulted in the loss of past and future wages and other job benefits.

511.   Plaintiffs request relief as provided in the Prayer for Relief below.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for relief as follows:

1. All damages that Plaintiffs have sustained as a result of Wal-Mart's conduct, including back pay, front pay, compensatory damages, and general and special damages for lost compensation and job benefits that they would have received but for the discriminatory practices of Wal-Mart;

2. Exemplary and punitive damages in an amount commensurate with Wal-Mart's ability to pay and to deter future conduct;

3. A declaratory judgment that the practices complained of in this Complaint are unlawful and violate 42 U.S.C. §§ 2000(e), *et. seq.*, Title VII of the Civil Rights Act of 1964;

4. Costs incurred, including reasonable attorneys 'fees, to the extent allowable by law;

5. Pre-Judgment and Post-Judgment interest, as provided by law; and

6. Such other and further legal and equitable relief as this Court deems necessary, just and proper.

Dated this the 23rd day of December, 2019.

Respectfully submitted,

*/s/Robert L. Wiggins, Jr.*
Robert L. Wiggins, Jr.
Ann K. Wiggins
Jon C. Goldfarb
Rocco Calamusa, Jr.
Candis A. McGowan
Lieselotte Carmen-Burks
Kameron M. Buckner
    WIGGINS, CHILDS, PANTAZIS,
FISHER & GOLDFARB
The Kress Building
301 19th Street North
Birmingham, Alabama 35203
(205) 314-0500
rwiggins@wigginschilds.com
awiggins@wigginschilds.com
jcg@wigginschilds.com
rcalamusa@wigginschilds.com
cmcgowan@wigginschilds.com
lcarmen-burks@wigginschilds.com
kbuckner@wigginschilds.com

Attorneys for Plaintiffs

## **JURY TRIAL DEMANDED**

Plaintiffs demand a jury trial as to all claims so triable.

*/s/Robert L. Wiggins, Jr.*

**Served by Certified Mail – Defendant's Address:**

**Registered agent:**
Wal-Mart Stores, Inc.
c/o C T Corporation System, Registered Agent
2 North Jackson Street, Suite 605
Montgomery, Alabama 36104

PLAINTIFF'S EXHIBIT

**A**

1
2
3
4
5
6
7
8        IN THE UNITED STATES DISTRICT COURT
9        FOR THE NORTHERN DISTRICT OF CALIFORNIA
10

United States District Court
For the Northern District of California

11   BETTY DUKES, et al.,                     No. C 01-02252 CRB
12            Plaintiffs,                      **ORDER GRANTING IN PART
                                               PLAINTIFFS' MOTION TO EXTEND
13       v.                                    TOLLING OF THE STATUTE OF
                                               LIMITATIONS**
14   WAL-MART STORES, INC.,
15            Defendant.
                                    /
16

17        The Court hereby orders that Plaintiffs' Motion to Extend Tolling of the Statute of
18   Limitations is GRANTED in part.  Specifically, the Court will extend the tolling period
19   awarded to former class members under American Pipe and Construction Co. v. Utah, 414
20   U.S. 538, 554 (1974) for a limited time, and below the Court sets forth the dates by which
21   former class members must take action.  The Court is granting this limited period of
22   additional tolling in the interest of justice and to avoid any confusion that might exist among
23   former class members regarding when the time limit for them to take action expires.
24        All former class members who have an EEOC notice to sue shall have until October
25   28, 2011 to file suit.  All former class members who have never filed an EEOC charge shall
26   have until January 27, 2012 to file charges with the EEOC in those states with 180 day limits
27   //
28   //
     //

1    and until May 25, 2012 to file charges with the EEOC in those states with 300 day limits.

2         **IT IS SO ORDERED.**

3

4    

5    Dated: July 25, 2011                    _____
                                             CHARLES  R. BREYER
6                                            UNITED STATES DISTRICT JUDGE

**United States District Court**
For the Northern District of California